JOHN O'BRIEN, Defendant in Error, *v.* CATHERINE B. HANSON ET AL., Plaintiffs in Error.

**February 15, 1881.**

1. That the price of some of the items of an account was agreed upon, while the price of others was not, is not conclusive that the account was not a running account within the meaning of the mechanics' lien law.

2. That notes were given for part of the goods in the account is not conclusive that the account was not a running account.

3. A mechanic's lien attaches to the building and to whatever interest the person contracting as owner has in the land when the first item of the account is furnished.

4. Where the person contracting as owner has an inchoate title, which is perfected pending the improvements, the lien attaches to the interest he then has.

5. The interest of an heir in the estate pending the administration will support a mechanic's lien for improvements erected upon the realty.

6. A lien may attach to tanks and a sheet-iron floor placed in and attached to a factory with the intention of making them a permanent improvement, where they are especially fitted and adapted to the transaction of the business conducted in such factory.

7. Where the cause was tried upon the issues as made by the answers, that the answer, which was a general denial, of one defendant was stricken out, is immaterial, where another general denial by another defendant remained on file.

Error to the St. Louis Circuit Court, Adams, J.
*Affirmed.*

D. W. Sadler, for the plaintiffs in error : The party must be owner or proprietor of land when material is furnished or work done. — Ph. on Liens, sect. 65 ; *Porter* v. *Tooke*, 35 Mo. 107. A vendee who holds under a contract that cannot be enforced is not such owner or proprietor. — *Metcalf* v. *Hummell*, 1 Gray, 297 ; *Gray* v. *Carlton*, 35 Me. 481 ; 14 Pick. 49 ; 3 Serg. & R. 541 ; 106 Mass. 228. The lien given by the statute of this State cannot attach to property which a party did not own at the time of the execution of the contract, or when materials are furnished or work done. — Ph. on Liens, sect. 74 ; *Howard* v. *Veazie*, 3 Gray, 233 ; *Hays* v. *Fessenden*, 106 Mass. 228 ; *Sibley* v. *Casey*, 6 Mo. 164. Hanson's deed from the administrator was not a completion of an inchoate right or the enlargement of an existing estate such as is treated of in the case of *Kirby* v. *Tead*, 13 Metc. 149. It was a new and distinct title, utterly destroying his prior interest and vesting an independent fee-simple title, no way dependent on his former interest. — *Thaxter* v. *Williams*, 14 Pick. 52 ; *Selkirk* v. *Coff*, 13 Gray, 313 ; *Bradewell* v. *Clark*, 39 Mo. 170. The creditors of the estate of Ralph Hanson held a *quasi*-lien on the lots described, for the payment of their debts. — *Mack* v. *Woodruff*, 87 Ill. 573. And the sale by order of the Probate Court destroyed all the interest Clarence had as heir. — *Kansas City Hotel Co.* v. *Bauer*, 65 Mo. 279. The dry-floor did not become a fixture, nor was it in any way attached to the building. No mechanic's lien could attach for the furnishing thereof. — *Collins* v. *Mott*, 45 Mo. 100 ; *Hauessler* v. *Missouri Glass Co.*, 52 Mo. 452 ; 1 Mo. App. 281. It may be removed without injury to the building or lessening the value of the realty. — *Graves* v. *Pierce*, 53 Mo. 423 ; Chitty on Con. (11th Am. ed.) 499. The dry-floor is no part of the building or machinery. — *McMahon* v. *Vickroy*, 4 Mo. App. 229.

FISHER & ROWELL, for the defendant in error: The refusal of the defendants to testify warranted the court in entering judgment against them. — Rev. Stats., sect. 4016; *Haskell* v. *Sullivan*, 31 Mo. 435; *Snyder* v. *Raab*, 40 Mo. 167. The fact that the price of some of these articles was agreed upon and that the notes in question were taken does not prove that this account was not continuous. — *Fathman* v. *Phelan*, 3 Mo. App. 605; *Madison Coal Co.* v. *The Colona*, 36 Mo. 446; *Ring* v. *Jameson*, 66 Mo. 428; *McMurray* v. *Taylor*, 30 Mo. 163. A lien attached to the tanks and sheet-iron floor. — *Goodin* v. *Hall Assn.*, 5 Mo. App. 290; *Cohen* v. *Kyler*, 27 Mo. 122; *Stockwell* v. *Campbell*, 39 Conn. 362; *Rogers* v. *Crow*, 40 Mo. 95. The title to the land was sufficient to support the lien. — *Fleitz* v. *Vickery*, 3 Mo. App. 593; 65 Mo. 288; *Schulenburg* v. *Vrooman*, 7 Mo. App. 133. There can be no dispute that when Clarence Hanson got his deed to these lots, it related back and passed the title as of the date of his purchase. — *Dubois* v. *Wilson*, 21 Mo. 313; *Allen* v. *Sales*, 56 Mo. 38; *Douglas* v. *St. Louis Sink Co.*, 56 Mo. 389; *Reilly* v. *Hudson*, 62 Mo. 383; *Donaldson* v. *Holmes*, 23 Ill. 85.

BAKEWELL, J., delivered the opinion of the court.

This is an action to establish a mechanic's lien. The suit is against the persons at whose instance the work and materials were furnished, who are alleged to have been the owners of the property to which these are said to have been attached. The trustee and *cestui que trust* of a deed of trust upon the premises are also made defendants, and filed separate answers, one of which contained a general denial. There was a judgment establishing the lien.

There was evidence tending to show that Ralph Hanson died in October, 1875, owning the lots in question, on which he was operating a bone-black factory at the time of his death. By his last will he expressed a desire that his wife

should conduct the bone-black business, and gave her power to sell the same at a reasonable price, and directed that after the sale of the business all his estate should pass in equal parts to his wife and his three children. The factory burned down after Hanson's death, and was rebuilt. The widow and her son Clarence, who are defendants in this case, carried on the business at the same place, as copartners. There was an understanding between the widow, who administered, and Clarence, that she would sell the interest of the estate in these lots to him as soon as this could be done; and this was done under an order of sale obtained on September 26, 1878, in the Probate Court. The sale was made November 14th, and the deed executed December 28th, the sale having been previously approved.

In August, 1878, according to plaintiff's testimony, plaintiff, who was then carrying on a boiler and machine shop, agreed to furnish C. B. Hanson & Co., the firm being composed of defendants Catherine and Clarence, such articles in his line of business as they might need for completing the bone factory. The testimony is contradictory as to whether such conversation took place. Plaintiff, under the order of defendants Hanson, did furnish to them machinery and work to the reasonable value of $340, the amount of the account in suit. The first item was furnished on August 31, 1878, and the last on December 16, 1878. The principal items are a tank, at $173, put up September 3d, and a sheet-iron floor put down on November 28th, which came to $153, at so much a pound. The other items are labor, and small articles which went into the factory. On September 15, 1878, a note of the firm was given to plaintiff for $175, at four months, and the account credited; on November 26th, another note, at sixty days, for $153.90, was given and credited in like manner. Nothing was paid on the notes. They were surrendered at the trial.

On January 9, 1879, Catherine and Clarence Hanson gave a deed of trust to Leslie, as trustee of Mathiason, to

secure sundry notes made by Catherine and Clarence Hanson to the amount of nearly $5,000.

1. It is contended by defendants that the demand for which the lien was filed arose out of distinct contracts, and was not a running account. The fact that the price of some of these articles was agreed upon, while that of another was not, is not conclusive ; nor is the fact that notes were given for part of the goods conclusive that the account was not a running account. *Fathman* v. *Phelan*, 3 Mo. App. 605. The court left this question to the jury, telling them that " if each or any of the items sued for was the subject-matter of a special, independent contract or agreement between plaintiff and defendants, C. B. Hanson & Co., disconnected from the others, then the indebtedness for such item accrued at the time the materials or labor constituting such items were furnished and the articles or work delivered." The jury found that the account was a running account, and there was substantial evidence to support the finding.

2. Defendants claim that the Hansons had no such interest in the realty when the things were contracted for and furnished, as will support the lien. There seems to be nothing whatever in this objection. The lien attached to the building and to such interest as Catherine and Clarence Hanson had in the lots at the time the first items of the account were filed. The fact that the estate of Ralph Hanson was then in process of administration did not divest them of their interest in the realty; and it was such an interest in each of them under the will as would support a lien under the act. The entire title was in Clarence on November 14th. The lien attached to the building and to such interest as Clarence and his mother had in the real estate when the first item of account was furnished, and when Clarence became the owner the lien attached to his interest. The deed of trust of Mathiason was several weeks subsequent to the date when the account, with all its items, accrued due, and is a subsequent lien. The improvements are the

primary objects which give the lien, and the land is added where it belongs, or so far as it belongs, to the owner of the buildings. It is unnecessary to repeat what has so recently been said on this question by this court in *Jodd* v. *Duncan*, *ante*, p. 417.

3. It is contended that the articles named in the account are not fixtures, and that no lien can be given for them. The sheet-iron floor was used for a drying-floor, and there is testimony that it was necessary for the carrying on of the work of the bone-mill. Rails three by forty feet were laid over a false wooden floor ; the sheet-iron was then brought in, riveted together, and the carpenter screwed the sheet-iron down to this floor at the ends. The tanks were on the ground ; they were over twelve feet high ; they were placed on the ground of the first floor and went through the second floor, coming out about flush with the floor. These tanks connect, by means of pipes, to the boiler. They might be removed without injury to the building ; but to remove them the pipes must be unscrewed.

Every case of fixtures stands very much on its own bottom, and is more for the jury than for the court. It is unnecessary to repeat here what has been said on this subject in *Goodin* v. *Hall Association*, 5 Mo. App. 294. The court instructed the jury that in order to find in favor of the lien they must " find from the evidence that said materials were furnished, and said work and labor was done, either for the purpose of constructing or repairing the machinery or other appliances in the factory of said firm of C. B. Hanson & Co., situated on lots six and seven, described in the petition, and if said other appliances were especially fitted and adapted to said factory, and to the transaction of the business therein conducted by said firm of C. B. Hanson & Co., and were, when placed in said factory, intended by said firm of C. B. Hanson & Co. to be a permanent improvement therein, and if said materials and labor actually went into the construction or repairs of said machinery or other appliances in said fac-

tory." There was evidence to warrant this instruction and to support the finding of the jury in favor of the lien, so far as this question was concerned.

4. After the pleadings were in, plaintiff gave notice to take depositions. Defendants Catherine and Clarence Hanson and Mathiason refused to testify. A motion was filed to strike out the answers of these defendants, which was sustained, unless they would appear and testify, and each pay one-third of the costs accrued. The Hansons testified, but refused to pay costs, and their answer was stricken out. This action of the court is complained of, but we see nothing in the objection. The answer of the Hansons was a general denial, and the answer of Mathiason was also a general denial, and this remained. The cause was fairly tried upon the issues as if the answers originally filed had all been in. The defendant Charles Hanson testified that the work was done and the matarials furnished, that the prices charged were those agreed upon, and that nothing had been paid. The defendants were not prejudiced by this action of the court.

5. Instructions asked by defendants were refused, but it is unnecessary to comment upon them. The instruction given by the court fully covered every question, and was a correct declaration of the law applicable to the facts in evidence. We see no error in the record to warrant a reversal of the judgment.

6. The bill of exceptions is unnecessarily encumbered with a mass of matter which could have been omitted. The substance of the documentary and oral evidence in the case, occupying about one hundred pages, might, with proper attention on the part of counsel, have been easily set forth in ten pages. This method of preparing bills of exception is reprehensible. It saves trouble to counsel, but it makes unnecessary costs and delays the appellate courts in the dispatch of business.

The judgment is affirmed. All the judges concur.