Bradbury, J.
With one exception only, this court concurs in the order in which the courts below distributed the funds in controversy. This exception relates to the rights of the plaintiff in error.
The finding of facts shows that the fund arose from the sale of seven city lots with the buildings and machinery placed thereon by the Ohio Lumber and Manufacturing' Company, the insolvent assignor, and that these seven city lots, the buildings erected thereon and the machinery placed, therein were an entirety, constituting a single manufacturing establishment. Notwithstanding the property was found to be a unit, the boiler, engine, etc., were sold separately, and the proceeds of their sale distributed to 'Arbuckle, Ryan and Company, the material men, by whom they were furnished. This separate sale, and application of proceeds was had by force of certain written instruments, by the terms of which the boiler, engine, etc., was not to become a part of the realty until their price was paid, and by which Arbuckle, Ryan and Company, also waived a lien, as material men, against the real estate. This left for distribution among the several remaininglienholders the balance of the fund arising from the sale of the property. So far as the finding of the court shows, these lienholders are the plaintiffs in error, The Shaw, 'Kendall and Company, and Henry P. Tobey. The former claiming, by force of a mortgage, the two latter by virtue of mechanic’s or material men’s lien.
The date of the first item in the account of “The Shaw, Kendall & Company,” was April 1, 1893; the date of the first item in the account of Henry P. Tobey, was April 18, 1893. While the *296 date of mortgage under which plaintiff in error claims, and the day it was left with the county recorder for record, was May 27, 1893. The liens of the material men dating, as the terms of section 3187, Revised Statutes, provides, from the day on which the first item in their respective accounts was furnished, are prior in point of time to that of the plaintiff in error under its mortgage. These liens respectively of the material men, then, attached to the property on the day when the first item in their respective accounts was furnished. According to the view we have taken of the ease, however, the rights of the contestants do hot depend entirely upon the dates when their respective liens attached, but, instead, that their interest in the property which the liens reached is a most material circumstance. The Ohio Lumber & Manufacturing Company was not the absolute owner of the property, and it was with that company that the respective contracts of the material men had been' made. In the nature of things the lien of the material men must be limited to the interest of the person who is'erectingthe structure or making the improvement. Breed, Lessee v. Nagle, 46 Ga., 112; Tritch v. Norton, 10 Colo., 337; Copley et al. v. O'Niel, 39 How. Pr. (N. Y.), 41; Hopkins et al. v. Hudson et al., 107 Ind., 191; Montandon & Co. v. Deas, 14 Ala., 33; Goldheim v. Clarke et al., 13 Md., 363; McGreary v. Osborne et al., 9 Cal., 119; Johnson et al., v. Dewey et al., 36 Cal., 623; Phelps et al. v. Maxwell's Creek Gold Mining Co. et al., 49 Cal., 336; Garrett v. Stevenson et al., 8 Gilman, (Ill.), 261. Ordinarily the general assembly would not have power to charge upon one man’s property the obligations of another. In the case of mechanic and material men’s liens it has not attempted to do so, *297 but confines “the lien to the interest of the owner in the lot of (or) land on which the ” building or improvement may stand ; section 3184, Revised Statutes. The statute recognizes that parties having an estate inland limited in its character or duration, may seek to improve it, and pledges that interest to one who may contribute in the prescribed method to such improvements,'but"it goes no further, and in no way authorizes an extension of the lien to the interest of another. . Doubtless, however, the lien of the mechanic or material man will expand and cover whatever interest the owner making the-improvement, may subsequently acquire. O'Brien v. Hanson, 9 Mo. App., 545; Garrett v. Stevenson, & Gilman (Ill.), 261; Phillips on Mechanic’s Liens, section 186.
In the case before us, The Ohio Lumber and Manufacturing Company was in possession of the seven lots upon which its manufactory was erected, under a contract of sale. The entire price it was to pay was $3,500.00; of this amount it had paid $700.00, leaving unpaid $2,800 ; as against the ven dor its only interest was the difference between the unpaid balance of the purchase price, $2,800.00 and . the valueof the property. If that value was $3,500.00, its interest would be $700.00; if the property was of greater value than the purchase price, its interest exceeded$700.00, the amount it had paid down; if the property was of less value than the purchase price- its- interest was less than $700.00. This is apparent because the vendor was entitled to the balance due him, even, if upon a sale of the property, the entire proceeds should be required for that purpose, while on the other hand, however much a sale of the property might produce he could demand no more than this balance. The interest *298 of the Ohio Lumber and Manufacturing Company-in the seven lots, at the inception of the liens of the material, men being this difference between the actual value of the lots and the balance due the vendor, their liens as against said vendor and those who should succeed to his rights attached to the real estate to the extent, only of that interest. The legal title to these lots was in the vendor. Material men, who furnished material under a contract with the vendee to aid in the erection of a manufactory, in process of construction by such vendee cannot postpone the claim of the vendor until their liens are satisfied. By the unbroken current of-authority, where no equitable estoppel-is established, the right of such vendor is paramount to the lien of a material man or builder. Scales v. Griffin, 2 Douglas, (Mich.,) 54; Paulsen v. Manske, 126 Ill., 72; Norden et al. v. Hammond et al., 37 Cal., 61; Harsh v. Morgan et al., 1 Kans., 293; English et al. v. Foote et al., 8 Smedes & Marshall (Miss.), 444 ; Orr v. Batterton, 14 B. Monroe (Ky.), 100. The right of such vendor to prioritj'- does not rest upon thedoctrinethat pertains to “vendors’ liens.” Vendors’ liens arise when the title to land has been conveyed, and is the creature of equity.
The right of one who enters into a contract to convey land, but retains the legal title, and is not bound to convey it.to the purchaser, until full payment has been made stands upon a different and more substantial foundation than one who has conveyed his land away. Whatever the rights of the latter may be, and howsoever easily lost, the former has reserved to himself the title andean be divested of it only by a full compliance with the terms of the contract.
*299 This legal title can be conveyed to another, subject, however, to the rights of the prior vendee, but the rights of the prior vendee against the new owner of the legal title are no greater than they were against his vendor. It is within the power of the original vendor to convey, to any purchaser, the legal title, and such purchaser will stand in the shoes of his grantor. In the ease under consideration, Ransom, the vendor of the Ohio Lumber & Manufacturing Company, conveyed the legal title to Bertram L. Paine. By this conveyance Paine became vested with every right that Ransom had previously possessed. While the legal title was in Paine, he conveyed it by way of mortgage to the plaintiff in error, the Mutual Aid Building & Loan Company, to secure a loan of about $5,000. This, Paine had a perfect right to do, and by this mortgage he conveyed to The Mutual Aid Building & Loan Company every right possessed by him, which, as we have seen, was precisely those that the original vendor. Ransom, had under his contract of sale ; and that was that the balance of the purchase price should be paid before the vendee, The Ohio Lumber & Manufacturing Com panjq was entitled to receive an absolute conveyance for the lots. The rights of the mortgagee, The Loan Association, having become fixed by the execution to it of the mortgage, it had no further concern about the action of Paine, its mortgagor; his subsequent action could not impair its rights. His deed conveying these seven lots to the Ohio Lumber & Manufacturing Company, executed and delivered after mortgage lien had attached, did not impair that lien. True it placed the legal title in the grantee, but the “interest” of the grantee was not thereby enlarged ; its obligation to pay the purchase price be *300 fore the ownership became complete still remained. This obligation had assumed a new form ; instead of being embodied in a contract for the sale and purchase of the lots in question, it was evidenced by the mortgage thereon ; nevertheless it was in fact the same. Houck on Mechanic’s Liens, section 145. Courts of equity, in reaching their conclusions, regard the substance of things rather than their mere forms.
It may be said, and it is doubtless true, that Paine, in receiving the conveyance for these lots, and afterwards executing a mortgage to The Mutual Aid Building & Loan Company, and a deed to The Ohio Lumber & Manufacturing Company, was a mere conduit for passing the title, and that the several conveyances were made at the. same time. This, however, does not weaken the position of The Mutual Aid Building’ & Loan Company. The order in which the several conveyances were made, and the attending circumstance clearly show a purpose on the part of the parties to vest in The Mutual Aid Building & Loan Company, as seeurit}T for a loan, all the title and beneficial interest in these lots, which Ransom, the original vendor retained in himself by virtue of his legal title. This right was to vest under the mortgage before the title should be conveyed to The Ohio Lumber & Manufacturing Company. This purpose was formally and legally ‘accomplished by means of the several conveyances had between the parties. Relying on this result, The Mutual Aid Building & Loan Company, in good faith, parted with its money. It succeeded to both the legal title and the beneficial interest of Ransom by these formal conveyances and paid full value for them. The situation of the material men is not changed, nor *301 their rights affected by these conveyances. The conveyances touched no- interest in these lots „o which their liens reached. By taking liens on the interest of the vendee the lienors were not clothed with a right to deny to the vendor the power of disposition over his legal title. Thaxter v. Williams, 14 Pick. (Mass)., 49; Campbell v. Phoro's Appeal, Simers’ Appeal 36 Pa. St., 247. So far, therefore, as the Mutual Aid Building & Loan Company succeeded to the rights of theoriginal vendor, Ransom, the lien of its mortgage was paramount to that of the material men. This is not a result following the application of the equitable doctrine of subrogation ; it is founded upon the legal rights of the parties flowing from their acts and purposes. Excluding the funds which arose from the sale of the boiler, engine, etc., furnished by Arbuckle, Ryan & Co., which were properly applied to the payment of the lien of that company, the proceeds of the sale of the other property, after paying costs, taxes, etc., should have been applied to the payment of the mortgage debt of The Mutual Aid Building & Loan Company to the extent that it succeeded to the rights of Ransom, which was in the sum -of $2,652.73, with interest from May27, 1893.
Any balance of such proceeds remaining undistributed should then be applied to the payment of the leins of The Shaw, Kendall & Company and Henry P. Tobey, whose liens are of equal priority with each other. Should any funds remain after satisfying the two claims last named, it should be applied to the payment of the balance remaining unpaid on the mortgage of The Mutual Aid Building & Loan Company.

Judgment modified