## BIG HORN LUMBER COMPANY v. DAVIS ET AL.

MECHANICS' LIENS—RUNNING ACCOUNT—ACCRUAL OF INDEBTEDNESS—
PARTIAL PAYMENT—TIME FOR FILING LIEN—ESTOPPEL—FINDINGS—
APPEAL AND ERROR—REMANDING CAUSE WITH DIRECTIONS TO ENTER
PROPER JUDGMENT.

1. A running account constitutes but one entire demand, which
   accrues only when the last item is furnished.

2. A running account for materials furnished for use in the con-
   struction of a building is an entirety, and, for the purpose
   of fixing the time for filing the account to perfect a me-
   chanics' lien, each item of the account relates to the last
   item delivered.

3. Within the meaning of the statute requiring a just and true
   account of the demand to be filed within a stated period
   "after the indebtedness shall have accrued," in order to per-
   fect a mechanics' lien, the word "accrued" refers to the
   last work performed, or the last material furnished, under
   the contract, either express or implied; and the indebted-
   ness will have accrued, in the case of a running account,
   at the date of the last work performed or the last item
   of material furnished, rather than the date of the last item
   of the account unpaid.

4. The period limited for filing a mechanics' lien begins to run,
   as to each item of a running account, from the date when
   the last work was performed or the last item of material
   furnished, notwithstanding a subsequent payment of the
   later items properly included in the account.

5. The subsequent payment by the owner of the last two items
   of a running account for materials furnished to and used
   by the contractor in the construction of a building did not
   change the date of the accrual of the indebtedness from
   the date of the last item furnished to the date of the last
   unpaid item, but, notwithstanding such payment, the in-
   debtedness accrued when the last item of material in the ac-
   count was furnished, within the meaning of the statute
   requiring the filing of a mechanics' lien ninety days "after
   the indebtedness shall have accrued."

ON PETITION FOR REHEARING.

6. Where, upon giving his check, which was valueless and was
   subsequently dishonored upon its prompt presentment, a
   contractor obtained a receipted statement of his account for
   materials used in the construction of a building, the fact

that such receipted bill was handed to the owner of the building by the contractor was not sufficient to estop the creditor from enforcing a mechanics' lien for the account, without a showing that the owner was misled thereby, and either paid the contractor, or lost some remedy or suffered some injury in consequence thereof.

7. A finding that the creditor of a contractor for materials furnished in the construction of a building gave a notice to the owner claiming a mechanics' lien against the building and the land upon which it stood, implies that the building and land were properly identified in the notice.

8. Where the trial court stated its conclusions of fact and law separately in writing, and the findings of fact were not excepted to by either party, but the appellant excepted to certain conclusions of law, and, on error, complained of the judgment upon the sole ground that it, and the conclusions of law so excepted to, were not supported by the findings of fact, and the evidence was not brought into the record; *Held,* the conclusions of law and the judgment being erroneous as based upon the findings of fact, the cause should be remanded with directions to enter the proper judgment, and not for new trial.

[Decided April 2, 1906.]                    (84 Pac., 900.)

ERROR to the District Court, Sheridan County, HON. CARROLL H. PARMELEE, Judge.

The facts are stated in the opinion.

*Burgess & Kutcher,* for plaintiff in error.

In a running account the time for the filing of a lien under the mechanics' lien law begins to run when the last item of labor is performed, or of material is furnished, and on the date of the last item furnished on a running account the indebtedness accrues. (Livermore v. Wright, 33 M., 31; Page v. Bettes, 17 Mo. App., 366; Mfg Co. v. Burns, 59 Mo. App., 391; Bolen Coal Co. v. Ryan, 48 Mo. App., 516; Heltzell v. Ry Co., 20 Mo. App., 435; Squires v. Fithian, 27 Mo., 134; Carson v. Steamboat, 16 Mo., 256; Stine v. Austin, 9 Mo., 558; Ring v. Jameson, 2 Mo. App., 584; Bruce v. Berg, 8 Mo. App., 204; Fire Ex. Co. v. Schwartz, 165 Mo., 171; 20 Ency. L. (2nd Ed.), 401, 402.) The phrase

"after the indebtedness accrues" means after it had become due and payable by the terms of the contract. (Kennedy v. Burrier, 36 Mo., 128; Mfg. Co. v. Burns, 59 Mo. App., 391; Fire Ex. Co. v. Schwartz Bros., 165 Mo., 171; Cutclif v. McAnnally, 88 Ala., 509.) In a running account there is but one cause of action. (Waffle v. Short, 25 Kan., 503.) The indebtedness on which suit was brought could have accrued but once. The last item was a part of the entire contract; and its subsequent payment could not change the time of the accrual of the indebtedness. The account required to be filed to perfect a mechanics' lien must include the paid as well as the unpaid items, and such inclusion will not vitiate the lien. (20 Ency. L. (2nd Ed.), 507, 508; Sexton v. Weaver (Mass.), 6 N. E., 367; Wolfley v. Hughes, (Ariz.), 71 Pac., 933; Harman v. R. Co. (Cal.), 25 Pac., 124.) The payment of a particular item of a running account does not remove it from the account. (Stine v. Austin, 9 Mo., 554; Merchand v. Cook, 4 Ia., 115; Phillips Mech. Liens (3rd Ed.), Sec. 289.) The contention of plaintiff in error is fully supported by the case of Hugg v. Hintrager (Ia.), 45 N. W., 1035.

To constitute a waiver of a mechanics' lien the intention to waive must clearly appear. (Peck v. Bridwell, 10 Mo. App., 524; Jarvis v. State, 22 Colo., 309.) And the burden of proof is upon the one claiming a waiver. (Kirkwood v. Hoxie, 95 Mich., 62.) A waiver being an affirmative defense must be specially pleaded. (Phillips Code Pleading, Sec. 434.)

The inclusion of non-lienable items in a lien statement will not vitiate the lien as to the lienable items where the lienable and the non-lienable items can be ascertained and separated from each other. (Johnson v. Building Co., 23 Mo. App., 546, 549; Kershaw v. Fitzpatrick, 3 Mo. App., 575; Edgar v. Salisbury, 17 Mo., 273; McLaughlin v. Schwacker, 31 Mo. App., 365.) The mechanics' lien law is to be construed remedially. (Hayden v. Wulfing, 19 Mo. App., 357.) The plaintiff in error is entitled to an at-

torney's fee of $25 in the event that this court reverses the lower court. (Rev. Stat., Sec. 2897; Mulcahy v. Buckley, 100 Cal., 484.)

*W. E. Mullen,* for defendant in error, Sanders. *S. P. Cadle,* for defendant in error, Davis. (W. S. Metz, of counsel, on petition for rehearing.)

The acceptance of payment from Mrs. Sanders of the November items shows that they were not a part of the account of the contractor, Davis. A mechanics' lien is exclusively a creature of statute deriving its existence only from positive enactments. It is a remedy given by law which secures the preference provided for, but which does not exist, however equitable the claim may be, unless the party brings himself within the provisions of the statute and shows a substantial compliance with all its essential requirements. (Wyman v. Quayle, 9 Wyo., 330.)

The account filed as a lien was not a just and true account, as required by statute, since it mentioned the January payment of the November items as a general credit upon the account, instead of a satisfaction of the particular items. Counsel take advantage of the presence of these items in the lien statement for the purpose of setting up a legal fiction, which is used in a more or less elaborate argument on the question of when the account accrued, in support of which they cite a number of cases from the State of Missouri on the proposition that in a running account the time for the filing of a lien under the mechanics' lien law begins to run from the time when the last item of labor is performed, or, where material is furnished, on the date when the last item is furnished, that being when the indebtedness accrues. This principle is correct in the abstract but we do not believe the authorities cited support the contention of counsel. In the first place, the plaintiff, by making a settlement with Sanders, did not treat the items as being a part of the running account between plaintiff and Davis. The Missouri authorities cited in plaintiff's brief hold that the

phrase "after indebtedness accrues" means after it has become payable by the terms of the contract.  An indebtedness cannot remain due and payable after the same has been in fact paid.

What was the real situation?  Davis had a running account with plaintiff for materials for the Sanders house, but how long did it run and what did it include?  This seems to be the very gist of the question.  We must draw our inferences from the facts admitted in the pleadings and the acts and situation of the parties.  Davis had made a settlement with the plaintiff and virtually closed his account, and the plaintiff had accepted a check from Davis in settlement.  But the Sanders house was not at that time finished, and there was a number of unpaid bills outstanding, which had been contracted by Davis.  The check given by Davis was not paid, but that was not the fault of Sanders.  No serious complaint appears to have been made by plaintiff about such non-payment until the fact was referred to in plaintiff's petition.  When Sanders, in January, demanded a statement of her account, the plaintiff it seems considered the November items as not having been a part of the Davis account and settlement.  At any rate the plaintiff elected to include them in an account which was by plaintiff considered to be owing to plaintiff by defendant Sanders.  Sanders had been getting other materials there, which were used in the house and it is very clear that plaintiff considered the accounts at the time as being two separate and independent accounts, and all this occurred at a time before plaintiff's lien was filed, and some five or six weeks subsequent to the dishonor of the Davis check.  The statement rendered by plaintiff to Sanders was a voluntary one and there was no dispute between plaintiff and Sanders.  It was the intent of plaintiff at that time to collect from Sanders for everything not covered by the Davis settlement and check, and it was the undoubted intent of Sanders to pay plaintiff for everything she owed, and it was for that purpose she called for a statement.  (Schulenburg

v. Vrooman, 7 Mo. App., 137; Mfg. Co. v. Brown (Wash.), 36 Pac., 273; Lumber Co. v. Woods, 53 Ia., 552.)

Where payment is made on specific items of an account, such payment will not affect the running of the statute of limitations on other items of account. (19 Ency. L. (2nd Ed.), 326; White v. Castigan, 72 Pac., 178.) A creditor is bound to make application of credit as directed by the debtor. (Bank v. Prior, 8 U. S., 312; Crafford v. Pancort, 62 S. W., 559.) And such application will be considered in determining a mechanics' lien. (Spaulding v. Burke (Wash.), 74 Pac., 829.) Where one has an account against another, the whole or a part of which is barred by the statute of limitations, he can not take it all out by merely entering a credit. The credit to have such effect must be authorized and proved to have been intended as a payment on the account generally. (Carroll v. Forsyth, 69 Ill., 133; Crum v. Higold, 32 Ill. App., 282.)

On petition for rehearing, it was argued and contended that the court misinterpreted the effect of the findings in respect to the November items as a part of the contractor's account; that if the judgment is erroneous the cause should be remanded for new trial, instead of directing a judgment; and that on the facts plaintiff was estopped from claiming a lien.

POTTER, CHIEF JUSTICE.

This is an action to recover the balance due upon an account for lumber and materials sold and delivered by the plaintiff, the Big Horn Lumber Company, to George Davis, one of the defendants, and used by him, as contractor, in the construction of a frame house for his co-defendant, Florence A. Sanders, and to enforce a mechanic's lien therefor upon said house and the premises upon which it is situated. The cause was tried in the District Court without a jury, resulting in a judgment for the plaintiff against the defendant Davis for the amount claimed to be due, and a dismissal of the action as to the defendant

Sanders and the·release of her said premises from plaintiff's alleged lien. The plaintiff complains of that judgment· on error.

At the request of counsel the trial court stated separately in writing its conclusions of fact and law. No exception was reserved by either party to the findings of fact. The plaintiff excepted to the conclusions of law and the judgment, so far as they relate to the defendant Sanders; and, by the petition in error here, presents the single objection that, as between the plaintiff and defendant Sanders, the conclusions of law and judgment are not sustained by the findings of fact. The evidence is not brought into the record.

Upon the issues joined by the pleadings and the evidence submitted on the trial, the court made the following findings of fact:

1. That on or about September 9, 1904, the defendant George Davis entered into a contract with defendant Florence A. Sanders for the construction of a frame house on the east 50 feet of Lot 2, in Block 5 of Thurmond's Second Addition to Sheridan, Wyoming, and to furnish all materials and labor necessary therefor.

2. That defendant George Davis thereafter purchased from plaintiff certain items of lumber and materials on a running account which were delivered and used in the construction of said frame house, the first of said materials and lumber being furnished on September 13, and the last on November 5, 1904, all being charged to defendant George Davis in the sum of $368.45; that on or about November 4, 1904, defendant George Davis made a settlement with plaintiff wherein, after applying credits on account of certain discounts, there was found to be due plaintiff the sum of $348.45, which was set forth on an itemized statement by plaintiff, and by plaintiff receipted as paid, and defendant Davis thereupon drew his check in favor of plaintiff for said sum and delivered the same to plaintiff; that the said check was afterwards dishonored and payment thereon

refused, and has never been paid, but is yet held by plaintiff; that the defendant George Davis has never made any other or further payment to plaintiff on said account.

3. That defendant Sanders, on or about January 19, 1905, requested a statement from plaintiff of the balance due on account of materials used in the construction of her said house and furnished by plaintiff, and plaintiff thereupon on said date rendered statements to defendant Sanders, as alleged in her separate answer, duly itemized as to articles and date of delivery, and defendant Sanders thereupon paid and plaintiff accepted as payment for said articles, being all articles sold on this account after October 25, 1904, the sum of $24.55, and received said statements duly receipted from plaintiff.

4. That the lien statement filed by plaintiff, a copy of which is set forth in its petition, contains charges for some of the identical items of material which were paid for by defendant Sanders on January 19, 1905, to-wit: items of date of November 3 and November 5, and for which plaintiff has receipted payment, aggregating $12.95; that the last item of plaintiff's account prior to November 3, 1904, unpaid was delivered October 25, 1904, by plaintiff.

5. That there is due from defendant Davis to plaintiff on said account the sum of $344.85.

6. That on January 25, 1905, the plaintiff filed in the office of the Register of Deeds of Sheridan County, Wyoming, an affidavit containing an itemized statement of the amount and value of the materials furnished by the plaintiff to the defendant George Davis for the construction of the said frame house of the defendant, Florence A. Sanders, and used by him in the construction of the said house, with all credits and offsets thereon, and a description of the said land on which the said house and building stands, with the name of the owner thereof, to-wit: Florence A. Sanders, and the name of the contractor for the construction of the said house, to-wit George Davis, and that at the time of the filing of the said

affidavit there was due the plaintiff from the said defendand George Davis the sum of $344.85 with interest thereon from December 5, 1904.

7. That more than ten days before the filing of the said lien by the said plaintiff against the said property of the defendant Florence A. Sanders, to-wit: on January 13, 1905, the plaintiff gave notice in writing to the owner of the said property upon which the said lien was claimed, the defendant herein, Florence A. Sanders, that it held a claim against the said frame house and the land upon which the said house stood for the sum of $368.40 with interest from December 5, 1904, and that the same was due from George Davis, the contractor of the said Florence A. Sanders for the erection of the said house of the said Florence A. Sanders, for materials furnished by the plaintiff to the said George Davis for use in said house.

Upon the foregoing facts, the record recites that the court found as conclusions of law:

1. That the items of material delivered by plaintiff November 3, and 5, 1904, respectively, were paid for, which payment was specifically receipted for by plaintiff in the aggregate sum of $12.95, which payment was accepted by plaintiff prior to the filing of its said lien, and the same were not lienable items.

2. That the indebtedness due plaintiff on said account accrued October 25, 1904, and the lien filed by plaintiff on January 25, 1905, was not filed within 90 days after such indebtedness accrued, and was insufficient in time to charge the premises of defendant Sanders.

3. That plaintiff should have judgment against defendant George Davis in the sum of $344.85, with interest and costs.

4. That as between the plaintiff and defendant Sanders the court finds generally in favor of defendant Sanders and against the plaintiff.

Upon these findings the single question seems to be presented whether the plaintiff filed its verified account within

the time required by statute to constitute the same a lien
upon the building and premises of the defendant Sanders;
and that is practically the only question argued by coun-
sel for the respective parties.   The general finding in the
fourth paragraph of the conclusions of law clearly refers to
the final conclusion of the court upon the law of the case
as controlled by the special findings of fact, and the pre-
ceding conclusions of law; and is not to be regarded, nor
is there any contention that it should be regarded as a
general finding of facts as well as of law.   The court had
been requested to state separately its findings of fact and
law, and it was not only its duty to do so, but we think it
clearly appears that the findings of fact were intended to em-
brace all the facts found by the court, upon which the case
was decided.   Indeed the special findings seem to cover
the whole case presented by the pleadings.   We observe but
one statement in the answer of defendant Sanders not cov-
ered by the findings of fact, and that we think is immaterial
and the trial court doubtless so regarded it.

The third finding of fact alludes to a statement of ac-
count rendered to the defendant Sanders, at her request on
January 19, 1905, as alleged in her separate answer, and
which was then paid by her.   The statement so furnished,
as appears by the answer referred to, embraced of the Davis
account here sued on only the items charged under the dates
respectively of November 3 and 5, 1904, amounting in the
aggregate to $12.95.   Whether the remaining items of the
statement then furnished to the defendant Sanders and
paid by her were ever a part of the Davis account is not
disclosed by anything in the record before us.   The account
attached to the petition does not include them; and the only
credit given upon the account for the above mentioned pay-
ment is for the sum of the November items, viz: $12.95.
The account attached to the petition and filed to perfect the
lien claimed by plaintiff includes the November items afore-
said, and the account stands credited with $12.95 paid by
defendant Sanders January 19, 1905.

We do not understand it to be contended however that the furnishing of such statement mentioned in the third finding of fact, and the acceptance of payment from the defendant Sanders for the items therein contained, are to be considered for any other purpose than to determine whether the November items originally constituted a part of the Davis account. It is argued on behalf of defendant in error, that upon the findings, it should be held that such items were not a part of the contractor's account. But it is not contended that if the November items were properly embraced in the Davis account, their inclusion in a partial statement of the account at the time and under the circumstances stated would estop the plaintiff from claiming a lien for the balance actually due upon the entire account; nor is it contended that the delivery of a receipted statement to Davis on November 4, 1904, upon the receipt by plaintiff of the debtor's check therefor, which was never paid, constituted an estoppel as against defendant Sanders. The court did not find that she was misled or prejudiced by either of the circumstances above mentioned, nor was any such issue presented by the pleadings. The court, on the contrary, did find that the check which induced the receipting of the bill had never been paid, and Davis was held liable for the entire amount. The court also found that on January 13, 1905, six days before her partial payment of January 19, 1905, the defendant Sanders was served with a notice of plaintiff's claim, wherein it claimed a balance of $368.40 due from Davis on the account for materials furnished for the Sanders house.

In this connection it is further to be observed, that although the defendant Sanders alleged in her answer that the contractor, Davis, had delivered to her plaintiff's receipted statement, she did not allege that she acted upon the same to her injury, or that she acted thereon believing the same to have been in fact paid. Nor did she allege that the rendering of the partial bill on January 19, caused her to be misled as to the exact situation, or that she acted to her

injury or prejudice as a result thereof. The court made no finding as to the allegation of defendant that the bill as receipted to Davis in November was delivered to her, which is the only allegation not, as we think, covered by the findings of fact. The court may have considered that circumstance immaterial in the absence of allegation or proof of resulting prejudice; or there may have been evidence in support of the allegation in plaintiff's reply to the effect that defendant Sanders had been promptly notified of the dishonor of the Davis check, and that the plaintiff looked to the property for payment of the account. No doubt if it had been shown that the contractor had been settled with by the owner, while relying upon the receipted bill without contrary information as to its payment, there would have been a finding to that effect.

The defendant Sanders alleged in her answer that on or about November 1, 1904, she was required to assume charge of the completion of the house, in consequence of the abandonment thereof by the contractor, but she fails to distinctly allege that she and not the contractor bought the November items; though the separate answer of the contractor denies that he purchased them. The plaintiff, in its reply denied furnishing the materials to Sanders, except that they were sold and delivered to Davis for use in the Sanders house. Upon this issue, the court found that all the materials charged in the Davis account, inclusive of the November items, were purchased by Davis, and that they were delivered and used in the construction of the Sanders house which Davis had contracted to build; and there is no finding of an abandonment of the contract on his part, nor do we notice anything in the findings which can be so construed.

We cannot agree with the contention of counsel for defendant in error that the third finding of fact conflicts with the second in this respect, and that the import of the third finding is that all the items paid for by defendant Sanders were independent of the account against Davis. The

second finding clearly and unequivocally declares that Davis purchased on a running account lumber and materials from the plaintiff which were delivered and used in the Sanders house—the first of such materials being furnished September 13, and the last November 5, 1904; and in the fourth finding of fact, the court states in substance and effect that the identical items charged under the dates respectively of November 3 and 5, which defendant Sanders paid for, were included in the Davis account and charged therein as of the same dates respectively. And the amount thereof is necessary to make up the total amount charged in the Davis account of $368.45, which sum is mentioned in the second finding as the sum of the charges against Davis for the materials so purchased by him. As to said November items the only reasonable inference from the findings is that Davis purchased them; that they were charged to him on his running account; that they were delivered and used in the construction of the Sanders house; and that the defendant Sanders paid the amount of those items, not as materials purchased by her independently of Davis, but as materials purchased by him and used in her house. As she had been previously served with notice of plaintiff's claim of lien, such payment by her is easily understood. The reason for her paying only a part of the account, or for the plaintiff furnishing her a partial statement of the account is not explained in the findings; and the evidence is not here for our inspection.

The foregoing review of the findings we think narrows the case down to the single controverted question of law whether, as a consequence of the payment for the materials furnished November 3 and 5, respectively, within the meaning of the mechanics' lien law, the indebtedness for which the lien is claimed is to be deemed to have accrued at the date of the last preceding item in the account, viz: October 25, 1904, as held by the learned District Court, or on November 5, 1904, the date when the last item of the materials charged in the account was furnished, as contended by counsel for plaintiff in error.

The statute governing mechanics' liens provides:

"It shall be the duty of every original contractor, within four months, and every sub-contractor, and every journeyman·and day laborer, and every other person seeking to obtain the benefits of the provisions of this chapter, *within ninety days after the indebtedness shall have accrued,* to file in the office of the Register of Deeds of the proper county, a just and true account of the demand due him, her, or them, after all just credits shall have been given, which is to be a lien upon such building and improvements." etc. (Rev. Stat. 1899, Sec. 2893.)

In Phillips on Mechanics' Liens at Section 325 the rule as to the time for commencing proceedings in the case of materials furnished upon a running account is stated as follows:

"A running account has been deemed an entire contract, and for materials furnished thereunder it is sufficient if the proceedings be instituted" within the statutory period "after the last item was furnished. Each item should not be regarded as a separate cause of action, but rather a continuous dealing."

And at Section 229 of the same work it is said:

"When work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as but a single contract."

That statement is said to correctly state the rule in the case of Union Trust Co. v. Casserly (Mich.), 86 N. W., 545, and to the same point the Michigan court cites, Jones v. Swan, 21 Ia., 181; Hoffer's Appeal, 116 Pa. St., 360; Brick Co. v. Stout, 45 Minn., 327; Page v. Bettes, 17 Mo. App., 366.

The principle is stated in Jones on Liens as follows:

"If a material man begins to furnish materials for the erection or repair of a building without any specific agreement as to the amount to be furnished, but there is a reasonable expectation that further material will be required of him, and he is afterwards called upon from time to time to furnish the same, he is generally entitled to·a lien as under an entire contract." And again, "If there was a continuous dealing and running account, and the work was done or the materials furnished at short intervals, and were appropriate to the condition and progress of the building, a presumption arises that it was understood from the beginning that the claimants were to do the work or furnish the materials for the construction of the building as the same should be required; and in such case the last item of the account is the date from which the limitation of the time of filing of the lien is to be taken." (2 Jones on Liens (2nd Ed.), Sec. 1435.)

The general principle thus stated does not seem to be disputed by counsel for defendant in error; but it is insisted that by the acceptance of payment for the specific items of the account furnished and charged in November, those items were taken out of the account, whereupon it stands as an account showing the date of the last item to be October 25, 1904. The effect of the contention is that the indebtedness is to be deemed as having accrued, not at the date of furnishing the last item originally included in the account, but at the date of the last item remaining unpaid. Such a construction of the statute would permit the debtor, whether contractor or owner, in cases like this, by directing the application of a particular payment to the later items of an account to destroy the lien; since it is obvious that if the proposition contended for is sound, the debtor by waiting until after the running of the statutory period from the date of most of the items before making a payment, and then directing the application thereof in satisfaction of all the later items remaining within the statutory period, the

right to file the lien would thereupon become lost. It is
clear that such a construction of the statute should be
avoided if possible. To prevent a similar injustice which
would follow the rule contended for, it is generally held
that, after the substantial completion of a building, the con-
tractor cannot extend the time for filing his lien by per-
forming additional work at his own instance, apparently
for the purpose of saving the lien. (2 Jones on Liens (2nd
Ed.), Secs. 1444, 1445.)

The solution of the question depends upon the interpreta-
tion to be given the words "after the indebtedness shall
have accrued" as employed in Section 2893. The fact has
been mentioned in a former case that our mechanics' lien
law was taken substantially from the statute of Missouri
upon the subject (Wyman v. Quayle, 9 Wyo., 326), and the
same words are employed in the statute of that state lim-
iting the time for filing the lien. The decisions of that
state are, therefore, at least persuasive, although announced
after our adoption of the statute. But our views agree
with the construction given by the courts of Missouri to the
words above quoted. In that state, in accord with the gen-
eral rule, it is held that a running account constitutes but
one entire demand which accrues only when the last item is
furnished; and they hold that a lien filed within the statu-
tory period from the time the last item was furnished will
be filed in time. The words "after the indebtedness shall
have accrued" is held to mean after the work is finished, or,
in the case of a running account, after the last item is fur-
nished. (Stine v. Austin, 9 Mo., 558; Carson v. Steam-
boat, 16 Mo., 256; Squires v. Fithian's Adm'r, 27 Mo., 134;
Livermore v. Wright, 33 Mo., 31; Bruce v. Berg, 8 Mo.
App., 204; Page v. Bettes, 17 Mo. App., 366; Heltzell v.
Ry. Co., 20 Mo. App., 435; Miller v. Whitelaw, 28 Mo.
App., 639; Bolen Coal Co. v. Ryan, 48 Mo. App., 512;
Mfg. Co. v. Burns, 59 Mo. App., 391; Fire Extinguisher
Co. v. Farmers El. Co., 165 Mo., 171.) The same construc-
tion is given a like statute in Alabama. (Cutcliff v. Mc-
Annally, 88 Ala., 507.)

In Bruce v. Berg, *supra,* it was held that to authorize a lien there need not be an express contract, but that an implied contract is sufficient; and the court said: "Our statute clearly contemplates running accounts for materials furnished and work done under implied as well as express contracts."

In referring to the expression "after the indebtedness shall have accrued," it was said in the case of Bolen Coal Co. v. Ryan, *supra:* "Our construction of this statute is that by the word 'accrued' the lawmakers mean to say when the indebtedness becomes complete by performing the labor or furnishing the material, and that it would be considered complete when the last labor is performed or the last of the material is furnished. 'Accrued' does not mean due. A man is in debt when the labor he hires is performed or completed, or when the material he purchases is fully furnished and is unpaid for, and his indebtedness accrues at such period."

In Mfg. Co. v. Burns, *supra,* it is said: "The indebtedness accrued when it came into existence as a completed obligation owing by defendant to the plaintiff, for a debt to accrue is nothing more nor less than for it to exist in a complete form; as on a running open account, this would be, under the implied contract, when the last item was furnished. * * * * A running account is founded on a continuing contract, express or implied."

In Livermore v. Wright, *supra,* the Supreme Court of Missouri stated the rule as follows:

"If the materials * * * were so furnished as two separate, distinct acts under two contracts, each must of necessity stand upon its merits, and there would have been no lien for those first furnished because the lien was not filed within ninety days thereafter; but if it was all one transaction, then, for the purpose of ascertaining the time within which the lien should be filed, it all relates to the time of furnishing the last item."

And it is held in Missouri that the giving of a note for part of the account is not conclusive evidence that there

were separate contracts, and does not prove that the account is not a running account. (Fathman v. Phelan, 3 Mo. App., 605; O'Brien v. Hanson, 9 Mo. App., 545; Livermore v. Wright, *supra.*)

Let it be supposed that the plaintiff had entered into an express contract with the contractor to furnish all the materials afterward delivered, and that they had all been specified in kind and quantity at the time of making the contract; the plaintiff, then, would not have performed its contract until it had delivered the last of the materials which it had agreed to deliver. The contract would have been single and entire, and the debt would have accrued only upon the delivery of the last material. A subsequent payment for a particular article, even for the last delivered, would not have altered the situation in that respect; the fact would remain that the contract was performed and completed when the last delivery occurred. Is there any difference in the case of a running account founded upon an implied contract? We do not think so. With the delivery of the last material charged in the account on November 5, 1904, the indebtedness became complete. The account was an entire thing. For the purpose of fixing the time for filing the account to perfect the lien, each item related to final delivery. In discussing an account for necessities furnished a child with respect to the general statute of limitations this court said in Jackson v. Mull, 6 Wyo., 55:

"We think there is no doubt that had it clearly appeared, or had it been clearly expressed in a contract between the parties, that the plaintiff should from time to time, according to the necessities of the child, furnish and provide her with clothing, wearing apparel, and other articles in question, and the defendant should repay to her any such expenditures, or that the defendant had made a general request that the plaintiff keep the child well and suitably provided in the respect indicated; and in either such case the plaintiff complied therewith, the transaction would have been a continuing one; each item of expenditure would then

relate back to the original agreement or request, and thus each item would be related to each other, and the statute would not run except from the date of the last item."

If, as construed in the cases above cited from Missouri, the word "accrued" refers to the last work performed or the last material furnished under the contract, either express or implied, which seems to us to be the only reasonable construction, then it follows, that, as to each item in the account, the period limited for filing the lien began to run only when the last material was furnished, viz: November 5, 1904. We do not perceive that a subsequent partial payment directed to be applied in satisfaction of the materials furnished on that date, and those delivered on November 3, and so accepted, can be held to change the date of the completion of the implied contract, or alter the fact that it was completed by the delivery of the last material on the date mentioned. Such payment might no doubt be considered for the purpose of determining whether the materials so paid for were furnished under a different or separate contract, but the court found that they constituted a part of the single running account,

The suit was brought upon the account, and recovery was sought for the balance due thereon. The account as filed properly embraced the November items, credit being given therein for the amount charged for such items as paid by the defendant Sanders. The indebtedness accrued, within the meaning of the statute, at the date of the furnishing of the last item, viz: November 5, 1904; and the lien having been filed within ninety days thereafter was filed in time.

In Iowa, it was held by the Supreme Court that the period for filing the lien ran from the date of the last item in the account of the material men, though that item (a blind) had been returned by the owner, who claimed that it was not called for in his agreement with the contractor, and the latter had abandoned the contract. The court said in substance, that the blind was furnished in good faith, to be

used in the building, and that the owner could not defeat the right of the material men to a lien by returning it; that the item was evidently a continuation of the account, and entitled the material men to a lien for all the items, by filing their statement and giving notice thereof within thirty days from the date of the last item. (Hug v. Hintrager, 80 Ia., 359.)

An analogous question arose in Washington. There the contest was between the lien claimant and a mortgagee. The lien was claimed for services rendered as "architect, superintendent, and laborer." In that state the lien is preferred to any mortgage attaching "subsequently to the time of the commencement of the performance of the labor;" and when a claim is filed as required by law it "relates back to the time when the work was performed or the material furnished, and hence takes precedence of all claims to the property improved which have been fastened upon it since that time." It was held that where the contract was an entirety, and contemplated not only the drawing of plans, but superintending the construction of the building to completion, the fact that, under it, compensation was to be made by the month did not affect the contract. Whether payments had in fact been made monthly does not appear, but, upon the principle announced, it is obvious that the lien was held to relate back to the commencement of the work, as against the mortgagee, so as to prevail over the mortgage, although the work for the period preceding the recording of the mortgage may have been paid for. (Nason v. N. W. M. & P. Co. (Wash.), 49 Pac., 235.)

In the case at bar the statement in the first conclusion of law that the items charged in November "were not lienable items" is evidently based upon the fact of their payment, and has no reference to their original character. There is nothing in the case or the findings of fact to indicate that they were not originally proper items upon which to found a lien. The District Court erred, in our opinion, in concluding, upon the facts as found, that the indebtedness ac-

crued on October 25, 1904, inŝtead of November 5, 1904, within the meaning of the mechanics' lien law, and that the lien was not filed in time. The judgment, so far as it relates to the defendant Sanders, and the lien claimed by the plaintiff upon her premises, will be reversed; and the cause will be remanded with directions to the District Court to enter a judgment establishing the plaintiff's lien and providing for its enforcement as by law required in such cases.                              *Reversed.*

BEARD, J., concurs.

SCOTT, J., did not sit, the case having been submitted before his appointment as a justice of this court.

### ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

In the former opinion in this case (84 Pac., 900) we stated that it was not contended that the inclusion of the November items of plaintiff's account in a partial statement rendered to the defendant Sanders and which was paid by her as set forth in the opinion estopped the plaintiff from claiming a lien for the amount actually due upon the account against the contractor, Davis. And it was further stated that it was not contended that an estoppel resulted from the delivery to Mrs Sanders by the contractor of his receipted bill which had been obtained in exchange for his check which had no value and was never paid, but payment of which upon its prompt presentation had been refused by the bank upon whom it was drawn. It is now insisted on a petition for rehearing by counsel for Mrs. Sanders that the question of estoppel was in the case, and that counsel did not intend to waive it. But the argument upon that subject is based almost entirely upon counsel's understanding of the evidence. They say that on the trial both parties introduced evidence, without objection, bearing directly upon the question of estoppel, apparently forgetting that no part of the evidence is in the record before this court. We have only the plead-

ings, findings and judgment as the basis for our considera-
tion of the case, and, as pointed out in the former opinion,
the pleadings and findings do not establish an estoppel
against the plaintiff. The answer of Mrs. Sanders alleged
that on January 19, 1905, she demanded of plaintiff a state-
ment of the balance due on account of materials used in her
house, and was thereupon furnished with a statement of the
November items (which had not been included in the re-
ceipted bill to Davis) and one other item, which she then
paid. But it does not appear either by allegation of
the answer, or in the findings, that she was misled
in consequence of such partial statement to her in-
jury, or that she was misled at all as to the actual
facts and condition of the account. On the contrary
it appears from the findings that six days prior thereto
Mrs Sanders had been notified that there was $368.40 due
the plaintiff from the contractor Davis for materials used in
her house, for which the plaintiff claimed a lien on her
property; and it is alleged in plaintiff's reply that promptly
on the dishonor of the Davis check, the plaintiff informed
Mrs. Sanders of such dishonor, and that they would look
to her property for payment of the Davis account. It will
hardly be contended that the circumstances of the check and
receipted bill amounted to a payment of the account in fact;
and as there is neither allegation nor finding that Mrs. San-
ders was misled by reason of the receipted bill, as well as
no allegation or finding that she paid anything to the con-
tractor in consequence thereof, or at all, and absolutely
nothing in this record to show or even indicate that she lost
any remedy, or suffered any injury, by reason of any of the
facts set out in the answer, or embraced in the findings, in
connection with either receipted bill, there is no ground
upon which to hold the plaintiff estopped from claiming or
enforcing its lien. The answer did not, in our opinion, state
sufficient facts to constitute an estoppel; and if it be con-
ceded that it was unnecessary to plead it, and that the facts
might have been shown which would amount to an estoppel

under the issues as framed by the pleadings, the record fails to disclose any such showing; and in the absence of the evidence, or of any finding of facts sufficient to constitute an estoppel on account of the circumstances above mentioned, we are not at liberty to assume that estoppel was proven, or that the court failed to pass upon the evidence in that respect.

We cannot agree with counsel for defendant in error that the lien notice as shown by the findings was insufficient to support the lien. The findings in that respect are quoted in the former opinion and, in our opinion, show a sufficient notice. The court found that the notice claimed a lien "against the said frame house and the land upon which the said house stood," which finding implies that the house and land were properly identified in the notice.

We perceive no reason for receding from our view that the findings clearly show that the November items were charged to the contractor upon his running account for materials furnished for the Sanders house, and that they were sold and delivered to the contractor for that purpose. There is nothing in the pleadings properly construed admitting a different state of facts, nor do we think that the findings insufficiently cover the issues tendered by the pleadings. We conceive it to be unnecessary to attempt to draw an inference from the pleadings as to the reason for Mrs. Sanders' payment of the November items and one other included in the statement furnished her January 19, 1905. We do not intend to attribute any improper motive to her in that respect, nor do we understand that there is any ground for so doing. It is left unexplained on the record here. It may be possible that at the time she believed it competent for her to rely upon the receipted bill for all the other items, and that she might be obliged to pay the items not included therein; or she might have understood that she alone was responsible for the unincluded items, but the court, however, found differently as to that matter.

It is suggested that instead of directing a judgment upon the findings of fact in accordance with our views of the law, the case should be remanded for new trial. If the record authorized such a course we would be willing enough to adopt the suggestion. But it does not. Counsel are mistaken in the assumption that plaintiff in error has asked merely for the reversal of the order overruling its motion for new trial. The petition in error prays for a reversal and vacation of the judgment as between the plaintiff and the defendant Sanders, and for judgment in its favor against Mrs. Sanders. The overruling of a motion for new trial is not assigned as error, nor is such a motion mentioned in the petition in error. The errors assigned are that the findings of fact are wholly insufficient to support the judgment in favor of defendant Sanders; that they do not support or warrant the conclusions of law numbered one and two; that said conclusions of law are erroneous as based upon the facts found; that the judgment in favor of defendant Sanders is not supported by the conclusions of law; that such judgment is contrary to law, as based upon the findings of fact; and that the facts found entitle the plaintiff to judgment against said defendant. We are not permitted upon the record to question the findings of fact; they seem to us to cover the issues presented by the pleadings, and no ground, therefore, is perceived for remanding the cause for a new trial.

Rehearing will be denied.

BEARD, J., and SCOTT, J., concur.