ARCHIE SAWYER,

*Appellant,*

(Plaintiff below)

vs.

THOMAS A. SAWYER AND LOEVA SAWYER, HUSBAND AND WIFE,

*Defendants,*

AND THE ALBANY MUTUAL BUILDING ASSO-CIATION, A WYOMING CORPORATION,

*Appellee,*

(Defendant below)

(No 2854; March 3, 1959; 335 Pac. (2d) 794.)

For the appellant the cause was submitted upon the brief of J. Richard Plumb of Rees and Plumb of Laramie, Wyoming, and J. J. Hickey of Ellery, Gray & Hickey of Cheyenne, Wyoming, with oral argument by Mr. Hickey.

For the appellee the cause was submitted upon the brief and also oral argument of J. R. Sullivan of Sullivan & Sullivan of Laramie, Wyoming.

Heard before Blume, C. J. and Parker and Harnsberger, JJ.

494

## OPINION

Mr. Justice Harnsberger delivered the opinion of the court.

The appellant Archie Sawyer brought suit against his son Thomas A. Sawyer, his daughter-in-law Loeva Sawyer, husband and wife, and The Albany Mutual Building Association, a Wyoming corporation, (1) to recover a $3,200 balance remaining unpaid upon a $10,000 contract price together with interest, costs and attorneys' fees, alleged to be due him as an original contractor for the building of a dwelling house for his son, (2) to have the amount sued for adjudged to be a first lien upon the subject property and (3) to have the property sold and proceeds applied to payment of the judgment sought. The son and daughter-in-law defaulted.

It is undisputed that during the period of construction, and before the contracted building was completed, the Thomas Sawyers mortgaged the premises to The Albany Mutual Building Association to secure payment of $6,800 which it loaned them.

The dispute between the plaintiff-contractor and the corporation resolved itself around the question of whether the plaintiff's builder's lien was filed within the four months allowed a general contractor after the claimed debt accrued, as provided by § 55-205, W.C.S. 1945:

"It shall be the duty of every original contractor, within four [4] months, and every sub-contractor, and every journeyman and day laborer, and every other person seeking to obtain the benefits of the provisions of this Act [§§ 55-201--55-224], within ninety [90] days after the indebtedness shall have accrued, to file in the office of the register of deeds of the proper county, a just and true account of the demand due him, her, or them, after all just credits shall have been given, which is to be a lien upon such building or improvements, and a true description of all the property, or so near as to identify the same, upon which said lien is intended to apply with the name of the owner or owners, contractor or contractors, or both, if known to the person filing the lien, which in all cases shall be verified by the oath of the person filing the lien, or by some reliable person for him; provided, that the original contractor shall not file a lien prior to the expiration of sixty [60] days after the completion of his contract, and no provision contained in any contract made between the owner and the original contractor shall be construed to in any way affect or restrict the right of any sub-contractor, journeyman or day laborer, to file his lien in the manner provided by this section."

It seems to be conceded that if the lien filing was made within the statutory time, it would take preced-

ence over the corporation's mortgage upon the property, even though that mortgage was given on February 28, 1953, and recorded March 2, 1953, while the lien was not filed until September 11, 1954. This is because § 55-207, W.C.S. 1945, provides:

"The lien for work and labor done and performed and for material furnished as aforesaid, shall be preferred to all other incumbrances which may be attached to or upon such building or other improvements on the ground, lot or land upon which they are situated or located, or either of them, subsequent to the commencement of such buildings or improvements."

It was tacitly agreed that the date of completion of the building contract marked the time when the indebtedness therefor accrued, but plaintiff claimed the building was not completed until May 14, 1954. This would make his filing of September 11, 1954, effective to establish his lien. The corporation maintains the building was actually completed either April 19th, as testified by one witness, or April 21st or 22nd, 1954, as testified by another witness, and the September 11th filing would, therefore, be too late. In the face of conflicting evidence on the important point of whether completion occurred May 14, 1954, or on either of the April dates, the trial court found in favor of the corporation and gave it judgment. The plaintiff appeals.

Our examination of evidence, which we find to be most favorable to the successful party, reveals the plaintiff and the owner of the property are father and son; the son was indebted to the father in the sum of some $7,600 as a result of similar business transactions between them, in addition to the balance due upon the $10,000 contract price for building the house; the corporation's loan of $6,800, secured by the mort-

gage, was used to make part payment to the plaintiff upon the contract price of $10,000, and reduced the amount owed upon the building contract to $3,200; building of the house was commenced October 13, 1952, and in August, 1953, it was rented for $80 a month to and occupied by the plaintiff and his family as their residence and this occupancy continued until they were evicted on May 24, 1956; the building was completed either the 19th, 21st, or 22nd of April, 1954; and the time for the completion of such a house was usually within one year.

The plaintiff's claim was based on the contention that notwithstanding the building contract with his son was oral, it was made in contemplation of an unsigned exhibit received in evidence and referred to as "specifications", but which is only entitled "Description of Materials". He insists that because item 15 of that exhibit specifies the kind and number of coats of paint for each room, his decision to have additional painting done by another painter after the original painting subcontractor had finished his work, prolonged the completion of the house until May 14, 1954; that because item 24 lists electrical outlets, the house was not finished until May 14, 1954, the day when plates were screwed upon them and a bell button cover was attached: and because the words "Finish Grade and furnish fill dirt" appears upon the exhibit, and he did some dirt leveling on May 14, 1954, the indebtedness did not accrue until that date.

The testimony of plaintiff's witnesses, including his own which was relied upon to prove that these somewhat trivial services were performed 19 months after the building was started and after the lapse of several months from the time when everything else necessary to complete the building had been done, im-

presses us as being somewhat ambiguous, uncertain and unconvincing. It is not surprising the court elected to believe other evidence before it which tended to show the house had actually been completed on a date between the 19th and 22nd of April, 1954.

The very fact that the house was put to beneficial use and occupied by a paying tenant is compelling in itself to show a successful completion of the contract. The explanation that the occupancy was to better enable the tenant contractor to perform some services to improve its habitation does not alter the fact that both he and his family, consisting of his wife and two children, enjoyed it as a home or that it had become an income-producing residence.

The law announced in Big Horn Lumber Co. v. Davis, 14 Wyo. 455, 470, 84 P. 900, 904, 85 P. 1048, that the words "after the indebtedness shall have accrued", as used in § 55-205, W.C.S. 1945, supra, means after the work is finished, leaves no doubt that the date of completion starts the running of the four months within which to make the lien filing.

We also accept appellant's contention that an encumbrance created during progress of construction is obtained with notice that the builder will be entitled to a superior lien providing only that timely and proper action is taken to establish the same. 57 C.J.S. Mechanics' Liens § 200, p. 755; 36 Am.Jur., Mechanics' Lien, § 181, pp. 120-121. Nor are we at odds with the statements in Shaughnessy v. Isenberg, 213 Mass. 159, 99 N.E. 975, 976, or in See v. Kolodny, 227 Mass. 446, 116 N.E. 888, 889, cited by appellant, that mere delay in completing a contract is not fatal to maintenance of a lien, because those statements are coupled with the caution that this is not so where there is bad

faith or where the delay was unnecessary. Bankers' Building & Loan Ass'n. v. Williams, 4 Neb.Unoff. 795, 96 N.W. 655, 656, also cited by appellant, while a relatively old case, points out that:

"* * * The authorities are numerous in which it is held that one cannot perform a slight amount of work on a building already completed a long time after such completion, and thus lay the foundation for the perfection of a mechanic's lien, which otherwise would have been lost by lapse of time; * * *"

although that decision goes on to say that if in truth and fact the building was not completed the time would run from completion.

On the other hand, appellee brings to attention Southern Lumber Co. v. Riley, 224 Ark., 298, 273 S.W.2d 848, 851, holding that furnishing of material in replacement or substitution to remedy a defect will not extend time to claim a lien. In Cain v. Central Plumbing and Heating Company, La.App., 85 So.2d 376, 378, the court noted with approval what was said in Gleissner v. Hughes, 153 La. 133, 95 So. 529, especially on rehearing, 153 La. 145, 146, 95 So. 533, to the effect:

"* * * that the time within which the lien must be recorded starts to run from the time the building is considered as completed, being when the final labor is performed or material furnished and it is occupied by tenants, even though technically the building is not completed or finished at that time."

In Fox & Co. v. Roman Catholic Bishop of the Diocese of Baker City, 107 Or. 557, 215 P. 178, 179, (incorrectly cited as Congdon v. The Roman Catholic Bishop) it was said:

"\* \* \* while the contractor was guilty of furnishing inferior materials, and in some respects slighting his work, the building was substantially completed not later than February 5, 1919, and that, while some other work was done in the way of substitution after that time, it was only of a character to make good defects in work already performed, and not sufficient to keep the liens alive after the expiration of 30 days from February 5, 1919.\* \* \*"

See also H. F. Cady Lumber Co. v. Reed, 90 Neb. 293, 133 N.W. 424. A persuasive statement appears in Hartley v. Richardson, 91 Me. 424, 40 A. 336, 337:

"While the lien law should be construed favorably to the laborer, the rights of the owner and subsequent grantees should also be respected. The laborer ought not to be encouraged to leave some trifling matter incomplete, and wait to see if his payment is made, and, if that fails, complete the trifling work left, and be allowed to revive and continue his lien, to the detriment of parties, who in good faith, relying upon the records, and the apparent completion of the work of the laborer, pay the contractor, or take a conveyance of the property. Protection to the laborer should not operate a fraud upon other innocent parties.\* \* \*"

Our reaction to the authorities called to our attention, as well as from our own independent research, convinces us that in close cases where the determination of the critical date involves installation of very minor items or performance of trifling service, the ultimate factor is the reaction of the trier of fact to conflicting testimonies as they may have been justly considered in the light of all the circumstances which had bearing on the question of good faith and necessity to prolong the period of construction. The evidence before the court indicated no necessity or valid reason for delaying completion of the house until May

14, 1954, but it was substantial and sufficient to justify the court's acceptance of one of the earlier April dates.

The judgment must, therefore, be affirmed.

Affirmed.