**THATCHER & SONS, INC., a Wyoming corporation, Appellant (Plaintiff),**

**v.**

**NORWEST BANK CASPER, N.A., Appellee (Defendant),**

**Glenrock Development Corporation and Black Hills Bentonite, (Defendants).**

No. 87–124.

Supreme Court of Wyoming.

March 8, 1988.

Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, for appellant.

William W. Harden, Casper, for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This is an appeal from a partial summary judgment giving the mortgage of appellee-defendant Norwest Bank Casper, N.A. (the Bank) priority over the lien of appellant-plaintiff Thatcher & Sons, Inc. (Thatcher). The issues raised by Thatcher are (1) whether the priority of a subcontractor's lien relates back to the commencement of construction on a project, and if so (2) whether cessation of construction precludes such a relation back. In response to the issues raised by Thatcher, the Bank also raised the issue of whether or not Thatcher has a perfected lien.

We reverse in part and remand.

Glenrock Development Corporation owns the Indian Hills Subdivision which embraces the Indian Hills Golf Course. During the construction of the golf course by Glenrock Development Corporation, various subcontracts were let with actual construction beginning in the summer of 1983. In November 1984, construction work on the golf course ceased when Glenrock Development Corporation was unable to pay some of its subcontractors or finance the

remaining construction needed for completion of the course. Consequently, Glenrock Development Corporation secured a loan of $490,000 from the Bank "[t]o pay off some existing debts * * * and to finish the construction of the golf course." This loan was secured by a first mortgage on the Indian Hills Subdivision, including the golf course, which was properly recorded by the Bank.

Several weeks after the Bank recorded its mortgage, Glenrock Development Corporation contracted for the first time with Thatcher to provide extensive dirt work on the fairways, greens, and tee boxes. This work was performed during the period of April 18, 1985, through July 23, 1985. On November 4, 1985, Thatcher filed a lien statement claiming a lien against the golf course property for the cost of the dirt work.

On December 24, 1985, Thatcher filed a complaint in district court seeking a judgment against Glenrock Development Corporation in the amount of $34,428.93 for the dirt work, attorney's fees, and costs and asking for a judgment declaring that its lien be foreclosed as a valid lien superior to the Bank's mortgage and the lien of co-defendant Black Hills Bentonite. Glenrock Development Corporation filed its answer generally denying the essential allegations of the complaint and alleging the affirmative defenses that (1) Thatcher failed to state a cause of action; and (2) Thatcher failed to name an indispensable party. Black Hills Bentonite filed its answer to the complaint and a counterclaim against Thatcher, and it filed cross-claims against Glenrock Development Corporation and the Bank seeking a judgment against Glenrock Development Corporation for payment in the amount of $19,827.38 for the bentonite clay which it furnished for lining a reservoir on the golf course and asking for a judgment declaring that its lien be foreclosed as a valid lien superior to the lien of Thatcher and the mortgage of the Bank.

The Bank filed its answer generally denying the essential allegations of Thatcher's complaint and alleging the affirmative defenses of failure to state a cause of action and failure of Thatcher to timely file its lien or meet all statutory requirements. The Bank and Glenrock Development Corporation respectively filed their answers generally denying the validity of Black Hills Bentonite's claim and lien.

Thatcher filed a motion and supporting documents for summary judgment against the Bank and the co-defendants, Glenrock Development Corporation and Black Hills Bentonite. In response, the Bank filed a motion opposing the summary judgment stating that there were material questions of fact regarding the work done by Thatcher and that there was no basis in fact or law regarding priority of Thatcher's lien as it related to the Bank's mortgage. The Bank did not file a motion for summary judgment.

On March 27, 1987, the court filed its partial summary judgment granting Thatcher judgment against Glenrock Development Corporation for $44,440.93 and accruing interest, decreeing that the Bank's mortgage has priority over the liens of Thatcher and Black Hills Bentonite, and ordering that the matter proceed to trial only upon Black Hills Bentonite's claim against Glenrock Development Corporation.

## PRIORITY OF A SUBCONTRACTOR'S LIEN

Section 29–1–305(b) and (c), W.S.1977, pertaining to the priority of a subcontractor's lien, states:

"(b) Any lien perfected as provided by this title attaches to the materials, machinery or supplies furnished and improvements made in preference to any subsequent lien, security interest or mortgage under any other provision of law which has been perfected upon real or personal property, including a leasehold interest, against which the lien is claimed.

"(c) Any lien, security interest or mortgage which has been perfected upon real or personal property or upon a leasehold interest prior to the commencement of any construction work or repair of the premises or property except as provided

by chapter 7 of this title shall have priority."

The court stated in its decision letter that:

"Section 29–1–305(b) * * * provides in essence that any lien properly filed will attach 'in preference to any subsequent lien, security interest or mortgage.' This [i]mplies a 'first in time first in right' to the [attachment] of liens after construction has commenced. The Bank's lien was subsequent in time even if the construction taking place after the loan was made was considered to be ongoing."

■ The Bank asserts that the court made the proper decision but that it is subsection (c) and not subsection (b) which gives its mortgage priority over Thatcher's lien. The Bank contends that, in the context of this case, the language "any construction work" must refer to a particular contract in privity with Thatcher, and, since the Bank's mortgage was prior to Thatcher's subcontract, the Bank's mortgage has priority.

This interpretation assumes language which is not found in § 29–1–305(c). There is nothing in this subsection which requires that the construction be performed pursuant to a particular contract in privity with a subcontractor. The Supreme Court will not read into laws what is not there. *Department of Revenue and Taxation of State of Wyoming v. Hamilton*, Wyo., 743 P.2d 877 (1987). This subsection merely makes it clear that a mortgage perfected prior to the commencement of any construction on a project has priority over a subcontractor's lien.

It is fundamental that statutes be viewed in the light of the objects and purposes to be accomplished. *Hurst v. State*, Wyo., 698 P.2d 1130 (1985). It is clear to this Court that one of the purposes of the lien statutes is to provide a method by which a subcontractor can be assured he will receive payment for work and materials furnished on a project. Construing § 29–1–305(b) as being a " 'first in time first in right' " statute obviates the purpose of the statute. The effect in most instances, as in this case, would be that the subcontractor would not have a meaningful lien. A lien on only the dirt work involved in the construction of a golf course is of no value.

■ We disagree with the finding of the district court that § 29–1–305(b) is a first-in-time, first-in-right statute. Although § 29–1–305(b) is not a model of clarity, the import of this subsection is that the priority of a perfected lien relates back and attaches to the improvements made from commencement of the project over any subsequent lien perfected under any other statute.

This Court is not unmindful of the district court's equitable concerns. The legislature, by the passage of our lien statutes as we construe them, has balanced the equities between a subcontractor and an intervening mortgagee by giving the subcontractor a superior lien. We do not deny that the lien statutes work a hardship, but we concede that it is not our prerogative to question whether the legislature correctly balanced these equities.

## CESSATION OF CONSTRUCTION

The court also stated in its decision letter that:

"On a purely equitable consideration, Norwest gave a loan to pay off all lien creditors, this enabled Glenrock Development to rejuvenate a project which was obviously dead in the water. It would strain credulity to believe that anyone would furnish material, labor, supplies or construct anything for the Development Company, broke and saddled with numerous liens for unpaid bills. The project as a practical matter was starting anew."

■ The Bank urges this Court to conclude from the above finding that the golf course project was abandoned when construction ceased in November 1984 and that such is equivalent to completion for purposes of our subcontractor's lien statutes. The Bank reasons that Thatcher's subcontract was thus a new beginning, giving the Bank's mortgage priority pursuant to § 29–1–305(c), because its mortgage was

perfected prior to commencement of the dirt work.

We decline to hold that the mere cessation of construction is tantamount to abandonment. This Court has taken the position that a delay in completion of construction is not fatal to the maintenance of a subcontractor's lien unless the delay is the result of bad faith or the delay is unnecessary. *Sawyer v. Sawyer,* 79 Wyo. 489, 335 P.2d 794 (1959). We see no compelling reason why we should change our position in this case and journey through the mine field of problems associated with the law of abandonment.

Our examination of the record, including the affidavits of the Bank opposing Thatcher's motion for summary judgment, fails to disclose that the delay in the completion of the golf course construction was unnecessary or the result of bad faith.

### PERFECTION OF LIEN

Without cross appealing and by way of its answering brief, the Bank contends for the first time that Thatcher's lien is null and void because the lien statement was not verified and filed by Thatcher and because statutory notices were not given. The Bank contends that it has not waived or admitted that the lien requirements have been met since this issue was raised in its answer to Thatcher's complaint. We disagree.

The Bank's answer alleged an affirmative defense that Thatcher "has not timely filed [its] lien pursuant to Wyoming Statutes or met all statutory requirements." However, in response to Thatcher's motion for summary judgment, the Bank filed a motion opposing the summary judgment, stating:

"1. There are material questions of fact regarding work done on Lot 110.

"2. [Thatcher's] Motion for Summary Judgment and allegations regarding priority as it relates to [the Bank] has no basis in law or fact."

The Bank failed to file anything in opposition to the motion for summary judgment which indicated in any way that Thatcher did not have a valid lien or that the lien

was not perfected. A review of the record of the hearing on the motion for summary judgment reveals that the Bank did not contend or argue that Thatcher's lien was not valid or perfected. To the contrary, the Bank's attorney stated:

"So I would state to the court that as far as priority, if the court would wish to grant summary judgment, that is fine, but they should grant Norwest summary judgment stating that they have priority."

During the hearing on the motion for summary judgment, the attorneys for Glenrock Development Corporation and Black Hills Bentonite did question whether Thatcher submitted documentation to show that the statutory pre- and post-lien notices were given. The court granted Thatcher's request for time to supplement the record so Thatcher could show that these notices were given. Thatcher did supplement the record by filing an affidavit reciting that the notices had been mailed to Glenrock Development Corporation. At no time during the period that the motion for summary judgment was under advisement did anyone raise any question concerning the manner in which the notices were given.

 Issues not raised or argued to the trial court will not be considered for the first time on appeal. *Dennis v. Dennis,* Wyo., 675 P.2d 265 (1984). In this case, the Bank failed to raise or argue to the court below the lien perfection issues presented to this Court. In addition, the Bank affirmatively limited its theory to the issue of priority of Thatcher's lien when it filed its motion opposing the summary judgment. Parties are bound by the theories which they advanced below. *Ricci v. New Hampshire Insurance Company,* Wyo., 721 P.2d 1081 (1986), quoting *Williams v. Public Service Commission of Wyoming,* Wyo., 626 P.2d 564, *cert. denied* 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). Under the doctrine of invited error, if a party induces action by a court, the party cannot argue error because the court took such action. *Id.* The Bank invited the court to look at only the priority issue. The Bank

cannot now complain that the court erred in not determining whether or not Thatcher's lien was perfected. This simply was not an issue properly preserved below, and we decline to make that determination on appeal.

## SUMMARY

We hold as a matter of law that Thatcher's subcontractor's lien has priority over the Bank's mortgage and that the court erred by entering partial summary judgment for the Bank giving its mortgage a lien superior to that of Thatcher's.

Remanded with directions to enter partial summary judgment consistent with this opinion.

THOMAS, J., filed an opinion concurring in part and dissenting in part.

CARDINE, J., filed a dissenting opinion.

THOMAS, Justice, concurring in part and dissenting in part.

I am in complete accord with the holding of the majority that the priority of a perfected subcontractor's lien relates back to the commencement of the project. I also am satisfied that cessation of construction does not demonstrate abandonment of the project.

I dissent from the final result proposed by the majority opinion, as I understand it. It appears to direct the trial court to enter a partial summary judgment in favor of Thatcher & Sons, Inc., the appellant. I am satisfied that there remain some genuine issues of material fact with respect to the question of abandonment. Certainly, cessation of work on the project does not, in and of itself, constitute abandonment of the construction project. In connection with other facts, however, it may satisfy a finder of fact that the project had been abandoned. I perceive this as an issue to be tried in this case, and therefore I cannot agree with any suggestion that, at this stage of the proceedings, a partial summary judgment should be entered affording lien priority to Thatcher & Sons, Inc. I

agree it is entitled to relief with respect to the summary judgment entered favoring Norwest Bank of Casper, N.A.

CARDINE, Justice, dissenting.

I dissent. The result reached in this case is entry of summary judgment by the supreme court for the unsuccessful appealing party, and this upon disputed questions of fact from which different inferences may be drawn. Those questions are for determination by the trial court and not an appellate court. I would reverse and remand for resolution of factual issues by the trial court.