(95 South. 529)

No. 25141.

GLEISSNER et al. v. HUGHES, Sheriff, et al.

(June 27, 1922. Rehearing Granted Oct. 19, 1922. On Rehearing, Jan. 27, 1923. On Motion to Correct Decree, Feb. 2, 1923.)

*(Syllabus by Editorial Staff.)*

1. Mortgages ⚖➡163(3) — Liens not effective against mortgagee unless recorded.

Under Const. 1913, art. 186, liens and privileges for labor and materials cannot affect third persons such as mortgagees unless recorded.

2. Mortgages ⚖➡163(3) — Legislature authorized to determine manner and time of recording liens to bind third persons.

Const. 1913, art. 186, providing that no mortgage or privilege shall affect third persons unless recorded or registered in the manner and within the time prescribed by law, leaves it to the Legislature to determine the manner and time within which liens and privileges for labor and materials shall be recorded to bind third persons such as mortgagees.

3. Courts ⚖➡90(4) — Construction of statute when relied on by persons furnishing labor and materials cannot be changed.

As it has been fairly well settled that Civ. Code, art. 3274, gives liens for labor and materials when duly recorded preference over pre-existing mortgages, persons performing labor and furnishing materials were justified in relying on that interpretation, and it is now too late to announce a different holding as against rights already acquired.

4. Constitutional law ⚖➡106, 161—Mortgages ⚖➡151(3) — Statute giving liens preference over prior mortgages does not divest vested rights or impair contracts when mortgage taken subsequent to enactment.

Civ. Code, art. 3274, under which liens for labor and materials prime pre-existing mortgages, is not in conflict with constitutional provisions against divesting vested rights and impairing the obligations of contracts where the rights of the mortgagee were acquired after the enactment of such law, as they passed subject thereto.

5. Mechanics' liens ⚖➡132(1)—Statute held to extend time for filing to 45 days after acceptance of work.

Act No. 229 of 1916 extends the time within which liens for labor and materials must be recorded to affect third persons from 7 days from the date of the act or obligation of indebtedness, as provided by Civ. Code, art. 3274, to 45 days after the acceptance of the work.

6. Mechanics' liens ⚖➡132(7)—Time for filing statement runs from "time of acceptance" of work or labor by agent superintending construction.

Under Act No. 229 of 1916, requiring statement of claims for labor and materials to be filed within 45 days after acceptance of the work in order to acquire a privilege, where a building was erected by the owner under a verbal agreement with one superintending the work for a percentage of the cost, the "time of acceptance" was the time when the labor and

materials were received and accepted upon the building by such superintendent.

**7. Mortgages ⊕⇒151(3) — Mechanic's liens prime prior mortgages.**

Under Act No. 229 of 1916, § 1, giving a privilege for work performed or materials furnished for the improvement of land, and providing that it shall be preferred to all other privileges or incumbrances, such liens prime prior mortgages.

**8. Statutes ⊕⇒107(2), 115(1)—Act relative to liens and privileges for labor and materials held to state but one object, and its title to embrace its provisions.**

Act No. 229 of 1916, the title of which recites that its purpose is to provide for the creation, recognition, and recordation of liens and privileges for labor and materials and to enforce the payment thereof, embraces only one object within Const. 1913, art. 32, and the provision thereof giving such liens and privileges preference over prior existing mortgages is embraced in the title.

**9. Mechanics' liens ⊕⇒132(1)—Need not be reinscribed within 12 months when suit brought within that time.**

Under Act No. 229 of 1916, § 6, providing that privileges for labor and materials may be enforced by civil action within one year from recordation, and that such right of action shall prescribe within one year unless renewed, it is only the right of action, and not the privilege itself, that expires in one year, and when suit is brought within that time the requirement of the statute is met, and it is not necessary to reinscribe the privilege to prevent its loss.

On Rehearing.

**10. Mechanics' liens ⊕⇒132(10) — Filing of claim within 45 days after last delivery under single order held sufficient.**

Under Act No. 229 of 1916, §§ 2, 8, where various deliveries of lumber were made under a single transaction or in filling a single order, a claim filed within 45 days from the last delivery was filed in time, and it was not necessary to file claim as each load was delivered.

**11. Mechanics' liens ⊕⇒132(6) — When work suspended and possession taken by tenants, time for filing began to run.**

Where an owner constructing a building under a verbal agreement with one superintending the work for a percentage of the cost postponed the completion of the work, and, to the knowledge of such superintendent, permitted tenants to take possession, the time for filing his statement of his claim, under Act No. 229 of 1916 began to run, though it was expected that at some indefinite time he would return and complete the work.

Land, J., dissenting in part.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Proceeding by rule by H. P. and A. M. Gleissner against T. R. Hughes, Sheriff, and others. From an adverse decree, plaintiffs appeal. Amended and affirmed.

Wilkinson, Lewis & Wilkinson, of Shreveport, for appellants.

Blanchard, Goldstein & Walker, of Shreveport, for appellees C. C. Hardman Co. and Builders' Supply Co.

E. W. & P. N. Browne, of Shreveport, for appellee American Nat. Bank.

Cook & Cook, of Shreveport, for appellees Shreveport, Long Leaf Lumber Co. and others.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. Plaintiffs became the owners, by the last will and testament of Mrs. P. B. Barlow, deceased, of two mortgage notes, dated May 25 and June 18, 1920, respectively, each for the sum of $10,000, the first being secured by special mortgage upon lots 285 and 286, and the second secured similarly by lots 228 and 229, all situated in the Pinehurst subdivision of the city of Shreveport, La. Neither note was paid by the maker, P. E. Jones; they were duly foreclosed upon, and the property was bid in by plaintiffs at sheriff's sale who sought to have the amounts of their bids credited upon the notes. The sheriff declined to make title to the property, for the reason that it appeared by the mortgage certificate that there were a large number of claims, amounting to several thousand dollars, purporting to be for labor and materials performed and

used in erecting certain improvements, recorded against the property.

Thereupon plaintiffs filed petitions for rules against the sheriff and all of the persons whose names appeared as claimants in the mortgage certificate, demanding that they show cause why said inscriptions should not be canceled and the property conveyed to petitioners free of incumbrance. Defendants (claimants) in rule responded, asserting liens and privileges alleged to be superior to plaintiffs' mortgages; and there were two separate judgments (the two causes having been consolidated below for purposes of trial) ordering plaintiffs to pay over in cash the amounts of their bids, and relegating all claimants to the proceeds. The judgments further ranked the claims, directing that they be paid in the order named, and that thereafter the mortgages, conventional and judicial, be paid according to the priority of their recordation. As between the Shreveport Long Leaf Lumber Company and the American National Bank it was ordered that the latter be paid the sum of $2,150, interest, and attorney's fees from the proceeds of the lien recognized in the former's favor. The decree further provided that the contractors, laborers, and materialmen be paid concurrently and pro rata as between themselves. The cases appear in this court in one transcript and under one number as the result of an appeal prosecuted by the plaintiffs.

The errors assigned by appellants are as follows:

"(1) The court erred in not holding that article 3274 of the Civil Code, and Act 229 of 1916, in so far as they attempt to give a preference to after-recorded liens over a prior mortgage, was violative of article 186 of the Constitution of 1898.

"(2) In any event, the court erred in holding that the liens or privileges claimed by the lienholders could supersede and rank an existing mortgage when the same were not recorded within seven days after the date of the contract for the same.

"(3) The court further erred in holding that Act 229 of 1916 superseded or repealed article 3274 of the Civil Code of the state.

"(4) The court erred in holding that under Act 229 of 1916 persons who furnished material or performed labor on a building are entitled to a lien superior to a prior mortgage recorded against the property.

"(5) The court erred in holding that Act 229 of 1916, by its terms intended to give to lienholders a superior lien over an existing mortgage on the property.

"(6) The court erred in holding that Act 229 of 1916 gave to laborers and furnishers of supplies on a building a superior lien and privilege over an existing mortgage, and in so holding erred in not holding that Act 229 of 1916 violated article 32 of the Constitution of 1898, in that it had more than one object, and such object was not expressed in its title.

"(7) In any event the court erred in not holding that the claim of the Shreveport Long Leaf Lumber Company, which was recorded on July 9, 1920, as against lots 285 and 286, was perempted or prescribed, because it was not reinscribed within 12 months, and the court erred in holding that the registry of the judgment in favor of the Shreveport Long Leaf Lumber Company on December 16, 1920, was a reinscription of its lien."

### Opinion.

1. Plaintiffs' first assignment is answered by the article of the Constitution (1913) itself (Article 186) upon which they rely. It reads:

"No mortgage or privilege on immovable property shall affect third persons, *unless recorded or registered in the parish where the property is situated, in the manner and within the time as is now or may be prescribed by law,* except privileges for expenses of last illness and privileges for taxes, state, district, parish, ward or municipal; provided, such tax liens, mortgages, and privileges shall lapse in three years from the 31st day of December, in the year in which the taxes are levied, and whether now or hereafter recorded." (Italics ours).

[1, 2] There is no doubt but that liens and privileges such as those asserted in this case cannot affect third persons like the plaintiffs unless recorded (McIlvaine v. Legare, 34 La. Ann. 925; Gay v. Bovard, 27 La. Ann. 290; Bank v. Fortier, 27 La. Ann. 246; Berwin v. Weis, 28 La. Ann. 365; Bank v. Ferry, 32 La. Ann. 315; Adams v. Adams, 27 La. Ann. 275);

but the article leaves it to the Legislature to determine "the manner and time" within which they shall be so recorded in order to bind such persons. Pursuant to similar provisions in the prior Constitutions, the Legislature had passed such laws, one of which was the Article 3274 of the Civil Code of 1870, in which it was provided that liens of the character now in question should "confer no preference on the creditor who holds it over creditors who have acquired a mortgage unless the act or other evidence of the debt is recorded within seven days from the date of the act or obligation of indebtedness. * * * " This article of the Code has been held to give such liens a preference over prior mortgages when seasonably recorded. Jacob v. Preston, 31 La. Ann. 518; Pedesclaux v. Legare, 32 La. Ann. 385; Johnston v. Weinstock, 31 La. Ann. 698; Gallaugher v. Congregation, 35 La. Ann. 829; Givanovitch v. Congregation, 36 La. Ann. 274; Brashear v. Alexandria Cooperage Co., 50 La. Ann. 587, 23 South. 540; Brown v. Staples, 138 La. 602, 70 South. 529.

[3] The language of that article (3274) might have been construed differently, inasmuch as it does not expressly say that such liens shall prime pre-existing mortgages, the provision being:

"It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage," etc.

It might have been said, in view of the rule of strict construction applicable to privileges, that the lawmaker meant mortgages which creditors "have acquired" since the filing of the lien; but the jurisprudence of this court seems fairly well settled in favor of a construction which gives to such claims timely recorded, a preference over prior mortgages, and persons such as the claimants in this case are justified in relying upon that interpretation in performing labor and furnishing materials for improvements to be erected upon property previously mortgaged; and it is now too late to announce a different holding as against rights already acquired.

[4] Of course, if the mortgage had been given before the law was passed, it might be said to come in conflict with constitutional provisions against divesting vested rights and impairing the obligations of contracts; but, where the rights of a mortgagee are acquired after the enactment of such a law, they pass subject to it, and the holder takes knowing that the mortgagee may create such superior rights against the property, and the constitutional provisions referred to have no application. And there is reason for subordinating prior mortgages to such claims, for the labor and material serve to create a greater value or security which would inure to the benefit of the mortgage, and such improvements should not be prevented or discouraged because of existing mortgages. However, the mortgage holder is not without remedy. In most, if not all, of such acts it is stipulated that the mortgagor shall not alienate or incumber the property to the prejudice of the mortgagee, and a vigilant creditor could doubtless protect himself against violation of such promise.

[5, 6] 2. A determination of the second alleged error depends somewhat upon the question as to whether the Act No. 229 of 1916 has extended the period within which such liens must be recorded to affect third persons from 7 to 45 days. Section 1 declares that claimants of the class now before the court shall have—

"a privilege upon such building, erection or improvements and upon the land belonging to such owner or proprietor on which the same is situated, and upon the proceeds or balance of the contract price in the hands of the owner, due or to become due to the contractor, to secure the payment of such work or labor performed, or materials, machinery or fixtures furnished. *Such privilege shall be preferred to all other privileges or incumbrances which may attach to or upon the said building, erection or*

*improvement* and upon the said land, or either of them, and upon the proceeds or balance of the contract price in the hands of the owner, due or to become due to the contractor." (Italics by the court.)

Section 2 requires that such claims shall be verified by affidavit, giving name of owner, contractor, claimant, description of the property, etc., and that:

"Such statement must be filed [in the mortgage records] within forty-five (45) days after the *acceptance of the work* by the owner of the land on which work was done or his trustee or agent."

In view of the declared purpose of this statute (229 of 1916) as expressed in its title— "To provide for the creation, recognition and recordation of the liens and privileges of laborers, contractors, subcontractors, material men, mechanics and furnishers of machinery or fixtures, and to enforce the payment of said liens and privileges, and to repeal all laws in conflict herewith"—we think the intention and result was that it made such liens superior in rank to all other incumbrances upon the property, whether arising prior or subsequent thereto, provided the same were recorded within 45 days "after the acceptance of the work," meaning, in cases like the one now under consideration, the acceptance of the labor, material, machinery, etc., of each individual claimant, as distinguished from the completed job. In other words, as to a general contractor, his claim may be filed within 45 days from the date of the acceptance of the building or improvement undertaken to be constructed; as to a subcontractor, 45 days from the acceptance of such subcontract work by the owner or his agent. Where, however, as in this case, the entire work is done by the owner, superintended by a foreman or agent, the delays begin to run as to labor performed and materials, machinery, furnished, from the time the same are performed or received

and accepted. The building in this case was erected by the owner under a verbal agreement by which one L. M. Rudy superintended the work, and was to receive as compensation 10 per cent. of the cost of construction, including labor, materials, etc., and there was therefore, as between the said owner and the laborers and materialmen, no other time of acceptance than when the labor and materials were received and accepted upon the building. Rudy's acceptance was the owner's acceptance, since the former was nothing more than the latter's agent. This view of the matter appears to be further accentuated by section 8 of the act, which reads:

"That all privileges under the provisions of this act are in full force and effect from and after the time the labor is performed, or material, machinery, or fixtures furnished."

We conclude that the Act 229 of 1916 had the effect of extending the period within which such liens may be filed from 7 to 45 days, and, instead of this delay beginning from "the date of the act or obligation of indebtedness," it was made to run from "the acceptance by the owner of the work," in the sense above indicated.

[7] With regard to the language of section 1 of said act, and its purpose to make such liens prime prior mortgages, we think what we have said in regard to article 3274 of the Code is equally applicable, and that liens timely recorded, as required by section 2, acquire a preference over such mortgages.

3, 4, and 5. Assignments Nos. 3, 4, and 5 have been covered by what has been said with respect to No. 2.

[8] 6. As to assignment No. 6, to the effect that the act violates article 32 of the Constitution of 1913, in that it has "more than one object and such object is not expressed in its title," we are unable to agree with the contention of plaintiffs' counsel. We think

that when the title declares its purpose to "provide for the creation, recognition and recordation" of such liens and privileges "and to enforce the payment" thereof, it has but one end in view, and that is to protect those classes of persons by providing a higher form of security for the payment of their claims. We are also of the opinion that, inasmuch as the very object of creating a lien or privilege is to give it preference over other classes of debts, the use of the words "To provide for the creation, recognition and recordation * * * and to enforce the payment of said liens and privileges, and to repeal all laws in conflict herewith," was sufficient to indicate a purpose to make them prime a prior existing mortgage.

[9] 7. As to the point that the lien and privilege in the case of the Long Leaf Lumber Company had to be reinscribed within 12 months after its recordation on July 9, 1920, notwithstanding suit had been brought thereon before the end of the year, such is not the requirement of section 6 of the act relied upon. The section declares that such privileges may be enforced by a civil action within one year from recordation, "and such *right of action* shall prescribe within one year from the date or recordation of the privilege * * * unless renewed in accordance with law." What is meant is that the right of action will be lost if not commenced within one year from the first recordation, unless the inscription is renewed within that time, and not that the privilege itself shall expire; so that, when a suit is once brought, the requirement of the section has been met, and the prescription interrupted. The authorities cited by counsel holding that the failure to reinscribe a mortgage causes it to perempt are inapplicable, because the Code specifically requires the reinscription in order to preserve the mortgage itself, and not the right of action thereon. R. C. C. 3369.

We find that materials were furnished and work performed, and the claims of appellees were recorded as follows:

|  | Date of Delivery and Acceptance. | Recorded. |
|---|---|---|
| Shreveport Long Leaf Lumber Co. | July 6, 1920 | July 9, 1920 |
| Central Lumber Company | May 1, 1920 | Oct. 22, 1920 |
| C. C. Hardeman Company | Aug. 8, 1920 | Oct. 26, 1920 |
| Builders Supply Company. | June 16, 1920 | Oct. 26, 1920 |
| L. M. Rudy (work ceased) | Aug. 26, 1920 | Nov. 2, 1920 |
| Witt Lumber Company | June 12, 1920 | Nov. 27, 1920 |
| Shreveport Brick Company | Apr. 8, 1920 | Dec. 12, 1920 |
| Buckelew Hdw. Company | Aug. 7, 1920 | Jan. 5, 1921 |
| E. W. Hamiter | Does not appear | May 20, 1921 |
| United Trading Company.. | July 2, 1920 | July 2, 1921 |

It is thus seen that none of the liens were filed within the 45 days from the date of furnishing materials and performing of the labor, except that of Shreveport Long Leaf Lumber Company, and hence, with this one exception, no lien was acquired which can prime the mortgage of plaintiffs. As to the claim of Rudy, the superintendent, he testifies that he ceased work on August 26th, and never returned, and his claim was not recorded until November 2d following. The work, as far as completed, had been accepted, for it is shown that tenants of the owner had commenced to move in before he stopped work.

For the reasons assigned, the judgments appealed from are amended by ranking the claims of plaintiff against the proceeds of the property as superior to those of all other claimants except that of Shreveport Long Leaf Lumber Company, and as thus amended, they are affirmed, at the costs of the appellees.

On Application for Rehearing.

By the WHOLE COURT.

PER CURIAM. A rehearing is granted herein, restricted to the claims of the Shreveport Long Leaf Lumber Co. and L. M. Rudy,

in so far as involving the questions of whether, in the case of the lumber company, the 45 days' delay must be computed from the date of each delivery of lumber or from the date of the last delivery of lumber, and in the case of the Rudy claim as to the time of the acceptance of the work.

LAND, J., dissents on the application for rehearing as to the proposition that prescription runs from date of acceptance of materials.

On Rehearing.

By the WHOLE COURT.

OVERTON, J. A rehearing was granted in this case, restricted to the claim of the Shreveport Long Leaf Lumber Company, Inc., in so far as relates to the question whether the 45 days' delay for filing its claim in the office of the recorder of mortgages, in order to preserve its privilege, should be computed from the date of each delivery of lumber, or from the date of the last delivery, and restricted to the question as to when the work was accepted in so far as respects Rudy's claim.

[10] A re-examination of the first question satisfies us that sections 2 and 8 of Act 229 of 1916, which govern the question, do not contemplate that claims for furnishing material to the owner for the construction of a building shall be filed as each load is delivered, when the various deliveries constitute, in reality, but one transaction, and that the claim is timely filed when filed within 45 days from the last delivery, which constitutes the completion of the delivery of the lumber ordered. Until then it cannot be said, under the terms of section 8 of the act cited, that the privilege accorded by law against the property is in full force and effect, and until it is in full force and effect the 45 days' delay for filing the claim provided by section 2 of the act cannot possibly run.

In this case, the evidence sufficiently shows that the various deliveries made by the Shreveport Long Leaf Lumber Company, Inc., constitute but one transaction, or the filling of but one order. Under these circumstances, the claim of that company was filed in time to preserve the privilege accorded by the statute, and therefore our judgment decreeing that this privilege primes the claim of the plaintiffs herein should be reinstated.

[11] In so far as respects Rudy's claim, it appears that he quit work in the latter part of August, 1920, and that tenants were then taking possession of the property. It is true that, when he quit, the work had not been quite completed, but it is also true that the part remaining unfinished was insignificant in comparison with the whole. While Rudy expected to return and complete the work, yet the time at which he was to return was indefinite, and, as we appreciate the evidence, was dependent on the will and ability of the owner to finish it.

When the owner permitted tenants, to the knowledge of Rudy, to take possession of the property, and postponed to some indefinite time Rudy's services, he accepted the work, in its incompleted state. The owner might have never called upon Rudy to finish it; and, as a matter of fact, he never has. Not to compute the running of the delay for the filing of the claim, under the circumstances, from the time Rudy quit, would be almost equivalent to preserving the privilege securing it indefinitely, without the filing of the claim. We therefore think that, within the purview of the statute, the work was accepted at the time Rudy quit, and that he should have filed his claim within 45 days from that time.

For the reasons assigned, it is ordered, adjudged, and decreed that our former decree in respect to the claim of Shreveport Long Leaf Lumber Co., Inc., and in respect to the claim of L. M. Rudy, be reinstated, and made the judgment of this court.

O'NIELL, C. J., and ROGERS, LAND, and LECHE, JJ., concur in the result.

## On Motion to Correct Decree.

PER CURIAM. Application refused for the reason that the judgment of the lower court recognizes but one lien in favor of the Shreveport Long Leaf Lumber Co., Inc., which is the one filed July 9, 1920, and accords to that lien its rank, and the judgment of this court recognizes no other lien in favor of said company.