OVERTON, J.
The Eunice Electric Theatre Company desired to construct a brick building, on two lots owned by it, in the town of Eunice, the building, when constructed, to be used for theatrical and mercantile purposes. The company did not let a contract for its construction as a whole, but undertook to do the work, without such a contract, through a firm of architects and a foreman and purchasing agent employed by it. The architects were not only to prepare the plans and specifications, but were employed also to advise in the letting of contracts for labor and material, and to render certain general services as engineers and superintendents of construction, for which they were to receive a percentage of the total cost of the work. The foreman was employed to supervise the construction of the building, and was vested with power to contract fpr labor and material. However, in supervising construction, and in contracting, he was under the general directions of the *84 architects, and his work and the contracts entered into by him! were subject to their approval. The construction of the building progressed until February 19, 1921, when the company found that it was financially unable to complete the work and make the necessary payments, and that it was unable to pay even for balances due for material that had been furnished and for work that had been done. The foreman then notified the lien claimants of the financial distress of the company, and suggested that they file their liens against the property.
On April 5, 1920, while the work was in progress, the foreman, acting for the company, entered into a contract with D. O. Rose, Jr., the plaintiff herein, to furnish the material and labor for, and to install, the plumbing, heating, and electrical work for the building. For the electrical work complete, not including certain fans, it was agreed that Rose should receive $4,000, for the plumbing, $1,259, and for the heating, $8,900, making a total of $14,159. It appears that Rose complied with his contract in all respects, and that, on its completion, the work, labor, material, and equipment furnished amounted to $14,259, or $100 in excess of the original contract price. During the course of the work Rose received on account $6,825.95, leaving a balance due him of $7,433.05. On February 4, 1921, 15 days prior to the cessation of all work on the building, and prior to the final acceptance of his work, Rose recorded in the mortgage records of the parish an affidavit showing the above balance due him, and asserting a lien and privilege on the building, and on the lots on which it is located, for labor performed and material furnished. To this affidavit is attached a statement, which was recorded with it, itemized to the extent of showing the amount to which he is entitled, according to his contract, for the installation of each one of the three systems above mentioned, including the furnishing of the necessary material |or each, in which affidavit is included the additional $100 just mentioned. In April, 1921, about two months after the above affidavit and the statement attached to it were recorded, Rose instituted suit against the -Eunice Electric Theatre Company for the above balance of $7,433.05, with legal interest thereon from February 2, 1921, and for the recognition of his privilege, as furnisher of material, and for labor performed in installing said systems, and recovered judgment for that balance, with interest, and with recognition of the privilege claimed by him’.
■ In September, 1920, several months after Rose had entered into his contract, the Eunice Electric Theatre Company executed a mortgage to secure a note, payable to the order of the American Bank & Trust Company, for $15,000, and signed by the former company as maker. In October following, which was prior to the recordation of Rose’s privilege, the above mortgage was duly recorded. The note, secured by the mortgage, 'was indorsed by the American Bank & Trust Company to the Interstate Bank & Trust Company, as collateral security. The latter company instituted suit on • the note and mortgage against the Eunice Electric Theatre Company; and, in,May, 1921, recovered judgment thereon, for the amount of the note, and for the interest and attorney’s fees stipulated therein. The judgment recognized the mortgage.
Some time following the recovery of the above judgment, Rose caused execution 'to issue on the judgment recovered by him, and caused the building and lots, against which he had recorded his privilege, to be seized and advertised for sale, to satisfy his judgment. The Interstate Bank & Trust Company then filed a third opposition, in which it asserts the right to be paid out of the proceeds of the sale of the property seized, by virtue of its prior recorded mortgage, substantially- for the reason that Rose has no privilege on the property; that the privilege *85 was not preserved in the manner prescribed by law; and for the further reason that, if he has a privilege, it is subordinate to third opponent’s mortgage, as it was not recorded in the manner and within the time prescribed by law.
As there can be no privilege unless there is a debt, the first question to be determined is whether the record discloses that the Eunice 'Electric Theatre Company is indebted to Rose for the equipment installed by him, and for the work done in installing it. The judgment recovered by Rose, together with the evidence offered by him to support it, is in the record. The Interstate Bank & Trust Company, third opponent herein, was not a party to the suit in which that judgment was recorded, and is therefore not bound by it. The judgment, however, affords prima facie proof of the indebtedness, .and there is nothing in the record to overcome that proof. Moreover, the evidence, as a whole, without reference to the judgment, is sufficient to establish the indebtedness.
Having considered the above question, the next to be considered is: Has Rose a privilege to secure the above indebtedness, and, if he has, does it prime third opponent’s mortgage, although recorded some time after the recordation of the mortgage? In discussing this phase of the ease third opponent contends “that a contractor (referring to one for the construction and repair of buildings and other works) has no privilege whatsoever if his contract is for more than $500 unless the contract is reduced to writing and recorded in the mortgage office within the time required by law,” and also that “the privilege of a contractor is inferior in rank to the claim of a person holding a mortgage on the building or other work unless the privilege is recorded within ‘seven days from the date of the act or obligation of indebtedness.’ ”
In support of its first contention, stated above, third opponent cites -article 2775 of the Revised Civil Code of 1870, which has reference to the privilege accorded the contractor or undertaker for work, and which reads as follows:
“No agreement or undertaking for work exceeding five hundred dollars, which has not been reduced to writing, and registered with the recorder of mortgages, shall enjoy the privilege above granted.”
In support of its second contention, third opponent cites article 3274 of that Code, which reads as follows:
“No privilege shall have effect against third persons, unless recorded in the manner required by law in the parish where the property to be affected is situated. It shall confer no preference on the creditor who holds it, over creditors who have acquired a mortgage, unless the act or other evidence of the debt is recorded within seven days from the date of the act or obligation of indebtedness, when the registry is required to be made in the parish where the act was passed or the indebtedness originated and within fifteen days if the registry is required to be made in any other parish of this State. It shall, however, have effect against all parties from date of registry.”
In the case of Hibernia Bank & Trust Co. v. Knoll Planting & Manufacturing Company, Ltd. (Murphy, Intervener) 133 La. 697, 63 South. 288, it was held that the word “act,” used in article 3274, in providing what should be recorded and when the1 recordation should be made, is applicable to the contract required to be reduced to writing by article 2775 of the Code, quoted above.
As Rose has a contract, which was reduced to writing, and which exceeds $500, the contention is therefore made, as stated above, that he has no privilege priming third opponent’s mortgage, recorded long prior to the recordation of any evidence of Rose’s privilege, and, in fact, that Rose has no privilege at all, because he has not recorded his contract in the mortgage records, but only a sworn statement of the indebtedness, with *87 ce'rtain details unnecessary to mention at this time.
While Rose has not recorded his contract, yet, before undertaking to apply the articles of the Code cited to the facts of this case, it is necessary to determine whether or not those articles have been affected by later legislation on the same subject-matter.
In 1916 the General Assembly adopted two acts relating to the construction of buildings and other works, and affecting those engaged in such construction. One of the acts referred to is Act 229 of 1916, which is entitled:
“An act to provide for the creation, recognition and recordation of the liens and privileges of laborers, contractors, subcontractors, materialmen, mechanics and furnishers of machinery or fixtures, and to enforce the payment of said liens and privileges, and to repeal all laws in conflict herewith.”
The other, Act 262 of 1916, is cited by third opponent in partial support of its position, and is entitled:
“An act to amend and re-enact section one of Act No. 167 of 1912, approved July 11, 1912, as amended by Act No. 221 of the Acts of 1914, approved July 9, 1914, which Act No. 221 of 1914 is an act entitled, to amend and re-enact section one of Act 167 of 1912, which Act 167 of 1912 is entitled, ‘An act relative to building contracts in this state; providing for the bond to be given therein, for the protection of the ■'owner; sub-contractor; workman; laborer; mechanic and furnishers of materials, for the recordation of the same, and the proceedings to be had thereunder.’ ”
Both of these acts were approved on the same day. The last one cited, which is Act 262, repeals all laws in conflict with its provisions. The former, which is Act 229, contains a similar repealing clause, except that it is provided therein that Act 229 shall not be construed as repealing or affecting the operation of Act 167 of 1912, as amended by Act 262 of 1916. Act 262, although amendatory of only one section of Act 167, covers the entire subject-matter of the latter- act, except that contained in sections 2 and 3 thereof. Section 2 relates only to the time of the taking effect of Act 167, and section 3 contains only its repealing clause. Hence, in this opinion the act of 1912 will not be referred to but instead Act 262 will be considered.
Act 262 relates to contracts for $500 or more, entered into by any undertaker, contractor, master mechanic or engineer for the construction or repair of any work, and requires that the contract be reduced to writing, and recorded in the mortgage records of the parish in which the contract is to be executed before the commencement of the work, and not later than 30 days after the date of the contract. The act provides that, when the contract is thus recorded, the recordation shall create a privilege on the building, or other work, constructed or repaired, and on the ground upon which the buildikg or work is erected or located, in favor of the undertaker, contractor, workmen, furnishers of materials, and others specifically mentioned. The act also requires the undertaker, contractor, master mechanic, or engineer, as the case may be, to furnish bond with good and solvent surety, and requires that the bond be attached to and recorded with the contract. It also provides that every person having a claim against the undertaker, contractor, subcontractor, master meichanic or engineer shall file within a specified time a sworn statement thereof with the owner of the structure or work, fpd record a similar statement, or his contract, if it be reduced to writing, in the mortgage records. The act then makes provision for testing the sufficiency and solvency of the surety on the bond, and for the cancellation, under certain conditions, of the inscription of the contract, bond, and claims, before the payment of the claims, and then provides that, if the surety' be insolvent or insufficient,. or if the owner fail to exact bond, or to cause the bond to be recorded in the mortgage records, in, the manner or in the time provided by the act, *90 he shall be liable to the same extent as the surety would have been, and gives to all subcontractors, workmen, laborers, mechanics, ana furnishers of materials a privilege on the building or improvement and grounds, provided their claims are recorded, as provided by the act. The act then declares that its purpose is “to require owners to secure bonds, with solvent and sufficient security, of the undertaker, contractor, master mechanic or engineer for the protection of all parties interested in the contract,”, and, in default of the exaction of surety by the owner, to make him liable “in the place of a defaulting undertaker, contractor, master mechanic or engineer.”
On the other hand, Act 229 of 1916, approved on the same day as Act 262, grants to mechanics, builders, artisans, workmen, and other persons, including contractors, subcontractors, and furnishers of material, who perform any labor upon, or furnish materials, machinery, or fixtures for, any building, erection, or improvement upon land, by virtue of any contract, written or verbal, with the owner, or his agent or trustee, upon.complying with the provisions of the act, a privilege on the building or improvement, and upon the land belonging to the owner, upon which the building or improvement is situated, .and also upon the balance of the contract price in the hands of the owner.
As will be observed, the act provides that the privilege shall be accorded to the contractor, the furnisher of materials, and to others above mentioned, who perform any labor upon any building, erection, or improvement, by virtue of any contract .with the owner, verbal or written, upon complying with the provisions of the act. These provisions are found in sections 2 and 3. Section 3 relates to the granting and preservation of the privilege, when the labor performed or material furnished is under a1 subcontract, or is performed or furnished for a subcontractor and, except in an unimportant particular the requirements for the obtainment and preservation of the privilege prescribed in section 3, are the same as those found in section 2. Section 2 provides the conditions on which the privilege, in all other instances, mentioned in the act, for work done and material furnished, is granted, and reads as follows;
“That any person claiming a privilege as aforesaid shall file in the office of the recorder of mortgages of the parish in which the land is situated, a statement setting forth the amount claimed and the items thereof as nearly as practicable, the name of' the owner, name of the contractor, name of the claimant, and the description of the property subject to the privilege, verified by affidavit. Such statement must be filed within forty-five (45) days after the acceptance of the work by the owner of the land on which [the] work was done or his trustee or agent.”
Comparing the two acts in their more important particulars, we find that Act 262 is applicable only to contracts of $500 or more; that it requires that the contracts to which the act applies be reduced to writing and recorded; that the owner is required to secure bond from the contractor; that this bond must be recorded with the contract; that any one having a claim against the contractor must file a sworn statement thereof with the owner, and record a similar statement, or the contract, if the latter be in writing, in the mortgage records; whereas Act 229 applies to contracts without reference to amount, and does not require them to be reduced to writing and recorded, but expressly grants the privilege, whether the contract be verbal or written, the only requirement, in addition to doing the work or furnishing the material, being that the claimant of the privilege shall file, that is, record, a sworn statement, conforming to the requisites heretofore stated, within the time prescribed by the act. .
The purpose of Act 262 is to require the owner to exact bond of the contractor for the protection 'of subcontractors, materialmen, and laborers! Not only is this its pur *91 pose, but the act contemplates also that the owner shall see to it that.the contract is reduced to writing and timely recorded with the bond. That the act so contemplates appears from the fact that the bond is required to be attached to the contract and to be recorded with it in the mortgage records, and from the further fact that the act expressly requires that the owner shall record the bond “in the manner” provided by it, which necessarily means with the contract in the mortgage records, since that is the manner provided for the recordation of the bond. If the owner complies with these conditions, the act is put into operation, and works to his benefit, by enabling him, under certain conditions, to rid his property of the privileges recorded against it before their payment, and to throw the claimants on the bond. If he elects not to come under it, or fails to comply with the conditions imposed upon him, or does the work in such a manner as not to come within its provisions, those with whom the owner has contracted, verbally or in writing, and those with whom the contractor has contracted, may resort to Act 229. So viewed the two acts are not conflicting. Each operates within its own sphere. This was, in effect, held in the case of Musey v. Prater, 147 La. 71, 84 South. 498, which was a concursus proceeding provoked by the owner, to which the contractor, his bondsman, and several furnishers of material^ were made parties, and in which the court said:
“We are of the opinion that Act 229 refers to all building contracts, regardless of amount, whether verbal or in writing, where no bond, or a defective bond, is given by the contractor, and the contract and bond are not recox-ded in the manner provided for in Act 262; and, as none of these things wex*e done by plaintiff in this cause, the materialmen, defendants, have the right to assex-t their liens and privileges given them under Act 229.”
Our conclusion, therefore, is that, if Rose has a privilege on the building and on the lots on which the building was constructed, the privilege arises under and is governed by Act 229 of 1916, and not under and by Act 262 of that year, for the owner, the Eunice Electric Theatre Company, did not elect to proceed under the latter act in erecting the wox’k, but undertook itself to do the work through agents, and, while it let contracts for various parts of it, yet it exacted no bonds of the contractors, recorded no contracts for the protection of those working under contractors, or furnishing material to them, and, hence, that company did not comply with the conditions necessary to put Act 262 into operation.
 It is next necessary to consider the effect that Act 229 has on articles 2775 and 3274 of the Civil Code, quoted above. While in our view, Acts 229 and 262 operate in different spheres and under different conditions, and are therefore not in conflict, yet this' cannot be said, in all respects, of the former act and the codal provisions cited. In so far as article 2775 of the Civil Code requires contracts for work to be done by undertakers and contractors, exceeding $500, to be reduced to writing and recorded, it is in conflict with Act 229, and to that extent must be considered as repealed by the latex-expression of the legislative will; and, in so far as article 3274 of the Civil Code requires the “act,” which in this instance is the contract-under which the work was done, to be recorded, it is in conflict with Act 229, and to that extent must be considered as repealed. In so far as relates to the effect of Afct 229 on article 3274 of the Civil Code, with respect to the time within which the privilege granted by the act must be recorded, the act extends the time from 7 or 15 days, as the case might have been under the article of the Code,.to 45 days, the delay for recordation beginning to run, not from “the date of the act or obligation of indebtedness,” giving rise to the privilege, as provided by *93 the pode, but from “the acceptance of the work by the owner of the land on which the work was done or his trustee or agent.” Section 2, Act 229 of 1916. Gleissner v. Hughes, 153 La. 133, 95 South. 529.
In this case, Rose’s privilege was recorded within 45 days from the acceptance •of the work done by him, and as a matter •of fact before the completion of the building as a whole, and therefore, from any viewpoint, the recordation of that privilege is well within the time prescribed by the statute. In other respects the recordation of the proof of Rose’s privilege is sufficient, and complies with the requirements of section 2 of the statute, quoted above. The statement recorded with the affidavit is itemized as far as practicable, which is all that the statute requires.
As the privilege is valid as against the •owner, and as it was timely recorded in the proper records, it primes, under sections 1 and 9 of the statute, third opponent’s mortgage, although the mortgage was recorded some time before the privilege. See, also, Gleissner v. Hughes, supra.
Other questions are argued in the briefs, but, in view of the conclusion we have reached, it is unnecessary to consider them.
For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and set aside, and that there now be judgment ranking Rose’s claim and judgment against the Eunice Electric Theatre Company, Limited, for said sum of $7,433.05, with legal interest thereon from February 2, 1921, and the costs •of court incurred in recovering said judgment, as superior to said mortgage and judgment of third opponent, and ordering it to be paid in preference thereto, out of the proceeds of the sale of said property. It is further ordered that .third opponent pay the costs of its opposition in both courts.
O’NIELL, O. J., dissents.