DIXIE BLDG. MATERIAL CO., INC., v. CHARTIER

—

(April 23, 1928. Opinion and Decree.)

—

(*Syllabus by the Court*)

1. **Louisiana Digest—Mechanics' Privileges —Par. 23.**

A furnisher of materials loses his privilege if it is recorded more than 45 days after acceptance of the work.

2. **Louisiana Digest—Mechanics' Privileges —Par. 45, 46.**

Under Section 5 of Act 139 of 1922 and the amendment thereof by Act 230 of 1924, if the owner fails to require a bond he becomes liable to furnishers of materials to the same extent as the surety would have been.

3. **Louisiana Digest—Things—Par. 4; Mechanics' Privileges—Par. 8.**

A heater resting upon the floor of a building without other connection to it than its smoke pipe inserted in a crock through the wall is not immovable and does not constitute materials for the erection of the building.

Appeal from the First City Court. Hon. Val J. Stentz, Judge.

Action by Dixie Building Material Co., Inc., against Paul Earl Chartier.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

Frymire and Ramos, of New Orleans, attorneys for plaintiff, appellant.

Rene A. Viosca, of New Orleans, attorney for defendant, appellee.

CLAIBORNE, J.  This is a suit for the price of building materials.

The plaintiff alleged that on January 9, 1926, it sold to J. E. Hagin, contractor, and P. E. Chartier, owner of premises No. 5709 Catina Street, building materials, paints, etc., to the amount of $157.48, which were used by the contractor in the construction and repair of said property; that there was no formal contract recorded in the mortgage office or any bond furnished by Hagin in favor of materialmen as required by law; that plaintiff has a privilege upon the land and buildings of the property 5709 Catina Street; that on July 27, 1926, plaintiff recorded in the mortgage office his privilege and served attested accounts upon said contractor and owner; that the said Hagin on June 30, 1926, filed his schedule in bankruptcy and was adjudicated a bankrupt on the same day, and was therefore relieved of all his debts and specially of the one claimed herein. Plaintiff prayed for judgment for $157.48 against Paul E. Chartier with privilege upon his property.

The defendant excepted that plaintiff's petition disclosed no cause of action and, for answer, denied all the allegations of each paragraph of the petition.

The plaintiff thereupon filed a supplemental petition in which it reiterated all the allegations of the original petition and further averred that "in the alternative and in the event the Court should decide that your petitioner has no lien upon the premises of the said Paul Earl Chartier, as particularly described in the original petition filed, then your petitioner shows, as a matter of fact and law, that the said Paul Earl Chartier is indebted unto your petitioner in the full and true sum of $157.48 with legal interest from July 26,

1926, and all costs of the petition, by reason of the fact of his failure to comply with the building law of the State of Louisiana being Act 139 of the Acts of the Legislature for the State of Louisiana for the year 1922 in that the said Chartier failed to obtain from his contractor, James E. Hagin, a bond in favor of the furnishers of materials and laborers, the owner who fails to so require a bond being liable to the furnishers of materials to the same extent as the surety on such a bond would have been liable."

To this supplemental petition, the defendant reiterated his original exception and answer.

The itemized bill annexed to plaintiff's petition is for bricks, lime and cement, and one crock amounting to $17.98 and $138 for one Sunbeam Heater, and $1.50 for recording his privilege.

There was judgment in favor of plaintiff and against the defendant for $17.98.

From this judgment the plaintiff has appealed.

The defendant has answered the appeal and prayed for judgment rejecting all of plaintiff's demand.

It was admitted that the defendant was the owner of the property upon which the materials were furnished and that the bill is correct; that the defendant employed Hagin as contractor to repair the property at an expense exceeding $1100 without any written contract or surety, and that defendant has paid Hagin "the full amount due him by way of offset of part of the indebtedness due by the contractor to the owner," and that there are recorded privileges to an amount exceeding $500; that Hagin completed his contract in February, 1926, and his work was accepted in the same month; that Hagin was discharged

as a bankrupt on June 30, 1927; that Hagin was an independent contractor.

The owner defends on three grounds:

1st. That the plaintiff has no privilege. Plaintiff's privilege was recorded more than 45 days after acceptance of the work and therefore too late. Section 2 of Act 229 of 1916; Rose vs. Eunice Elec. Theatre, 154 La. 81, 97 So. 322; Cook vs. Carter, 160 La. 88, 106 So. 704.

2nd. No personal claim against the owner. In 1 La. App. 27, Utley Paint Co., we decided under Act 139 of 1922, Sec. 5, that the owner who fails to require a surety in favor of materialmen makes himself personally liable for the payment of materials ordered and used by the contractor.

Defendant argues that this Act has no application to this case which is governed entirely by Act 229 of 1916. He refers to McDonald vs. Harris, 2 La. App. 241.

There was no question in that case of making the owner liable personally.

In the case of Gleisner vs. Hughes, 153 La. 133, 95 So. 529, Act 139 of 1922 was not invoked or interpreted, only Act 229 of 1916.

Rose vs. Eunice Electric Theatre, 154 La. 81, 97 So. 322, involved the same Act and Act 229 of 1916. The Act of 1922 is not mentioned. The same may be said of Cook vs. Carter, 160 La. 88.

But section 5 of the subsequent Acts 139 of 1922, p. 293 and Act 230 of 1924, provides:

"If the bond is found to be insufficient in amount or not to have a proper and solvent surety, or if the owner fails to require a bond, or if he fails to record the contract and bond during the time herein provided, he shall be liable to subcontractors, journeymen, cartmen, truckmen, workmen, laborers and mechanics, and furnishers of materials to the same extent as the surety would have been."

To ignore these statutes and to deny "furnishers of materials" recourse against delinquent owners would be to disregard a plain law. The Act of 1922 is entitled: "An act relative to building contracts; providing for the bond to be given in connection therewith * * * and to provide for the protection of materialmen * * * and all others who shall do or perform any work or labor upon or furnish material * * * for any building * * * upon land in this State."

The repealing clause reads:

"All laws and parts of laws in conflict or inconsistent herewith on the same matter be and the same are hereby repealed, except, etc."

The Act 167 of 1912 contains the following clause on page 304:

"The purpose of this Act is to require owners to secure bond with solvent and sufficient surety from the undertaker, contractor, master mechanic, or engineer for the protection of all parties interested in the contract, as their interests may appear, which said surety is to stand in the place and stead of a defaulting undertaker, contractor, master mechanic, or engineer."

The same clause is repeated in Act 221 of 1914, p. 420, and in Act 262 of 1916, p. 538.

The argument is made that this is a harsh law that makes one responsible for the payment of another's debt. Every law has its reason. It was provoked by owners and contractors who undertook work for a price at which it was impossible to build. The contractor would receive the second or third payment, which he would keep as his profit, and then abandon the job without paying the furnishers of materials.

But in this case, if we interpret the admissions correctly, the hardship might be

upon the materialmen, if the owner suc-ceeded in his defense. He did not pay the contractor in money, but only "by way of offset of part of the indebtedness due by the contractor to the owner (himself)." The contractor had no right, in law or in morals, to pay his debt to the owner by giving in payment materials which he had not paid for; nor did the owner have the right to apply such unpaid materials to the payment of his contractor's debt to him. Act 76 of 1926 makes it a misdemeanor for any contractor to apply any money re-ceived on account of his contract to any other purpose than the payment of bills for materials furnished to perform his contract.

3rd. We are in accord with the defend-ant in holding that the Sunbeam heater does not constitute "materials," which went into the building, as part of it. The evi-dence is that the heater rests upon the floor like an ordinary stove and that its smoke pipe is inserted into a crock in the wall to carry away the smoke. No part of the heater is attached permanently to the building with plaster, mortar, or nails; it can be removed without breaking or in-juring any part of the building. C. C. 468-469 Act 51 of 1912, p. 60, makes heating plants and furnaces "immovable" when actually connected with or attached to the building by the owner for the use or con-venience of the building.

In the case of Lhote vs. Fulham, 51 A. 780, the Supreme Court decided that chan-deliers screwed to pipes which themselves were immovable by destination did not form part of the building.

See also Scovel vs. Shadyside Co., 137 La. 918, 69 So. 745; Scott et al. vs. Bren-nan, 161 La. 1017, 109 So. 822.

It is therefore ordered that the judg-ment be affirmed.